Filed 7/17/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BANK OF AMERICA, N.A., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MARGARET R. ROBERTS, <br><br> Defendant and Appellant. | F064109 <br><br> (Super. Ct. No. VCU240471) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

Margaret R. Roberts, in pro. per., for Defendant and Appellant.

Pite Duncan, David E. McAllister and Drew A. Callahan for Plaintiff and Respondent.

Appellant Margaret R. Roberts (Roberts) obtained a home equity line of credit from respondent Bank of America, N.A. (B of A), which provided a credit limit to Roberts in the principal amount of $250,000 (the home equity loan), secured by a second deed of trust on certain real property in Three Rivers, California (the real property). Later, when the holder of the first deed of trust commenced nonjudicial foreclosure proceedings, Roberts sought to avoid foreclosure by requesting that B of A consent to a short sale of the real property to a third party. The short sale would pay off the entire obligation secured by the first deed of trust and about $27,000 of the amount owed to B of A under the home equity loan. In seeking B of A's consent to the short sale, Roberts agreed that she would remain obligated to repay the balance of her home equity loan to B of A. B of A consented to the short sale and released its secured interest in the real property under the second deed of trust. When Roberts later defaulted on the home equity loan, B of A filed the present action seeking a money judgment against Roberts for the balance due under the loan. B of A then moved for summary judgment on its complaint. Roberts opposed the motion on the ground that certain statutes barred B of A from seeking a deficiency judgment against her. The trial court rejected Roberts's arguments, granted the motion and entered judgment against Roberts in the sum of $235,402.47. Roberts appeals from that judgment, raising many of the same arguments that she did in the trial court. We agree with the trial court that none of the statutes referred to by Roberts precluded a deficiency judgment against her and that B of A was entitled to judgment as a matter of law. Accordingly, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

In December 2010, B of A filed a complaint against Roberts for breach of contract and common counts, based on Roberts's alleged default on her contractual obligation to repay the home equity loan. The complaint included an allegation that on or about June 2, 2009, B of A "accepted the short sale proceeds in the sum of $27,090.11, for the

2.

release of its lien on the [r]eal [p]roperty only." Attached to the complaint, and incorporated therein, was a copy of (i) the home equity loan agreement, (ii) the deed of trust, and (iii) the short sale agreement. In the short sale agreement, Roberts expressly acknowledged and agreed that she was responsible to repay the unpaid balance of the home equity loan.

In May 2011, B of A moved for summary judgment on its complaint. The supporting declaration by Jason Dunn, an Assistant Vice President of B of A, averred the factual basis for the home equity loan, the default thereof by Roberts, and the amount that was due and owing under said loan. Dunn's declaration also asserted there was a short sale agreement which released the lien on the real property only. Copies of the home equity loan, the deed of trust, and the short sale agreement were all attached to, and authenticated by, Dunn's declaration. As noted, the short sale agreement included Roberts's acknowledgment that after the short sale was completed, she would remain obligated to repay the balance of the home equity loan. With one exception that was subsequently corrected, these factual matters were set forth in the separate statement of undisputed material facts in support of B of A's motion for summary judgment.[1]

In August 2011, Roberts filed her opposition to the motion for summary judgment. Roberts admitted to entering the home equity loan and defaulting on same, but she asserted that in light of the short sale in which B of A received a portion of the delinquent amount, B of A was barred from seeking a deficiency judgment against her based on Code of Civil Procedure[2] sections 580e (an antideficiency statute relating to short sales)

---

[1] There was one obvious typographical error in B of A's separate statement. Instead of referring to the existence of a *short sale* (as B of A's complaint and the supporting declaration of Dunn had done), the separate statement erroneously stated the holder of the first trust deed had *foreclosed*. Roberts's opposition and B of A's reply corrected that error, and neither party was prejudiced by it.

[2] Unless otherwise indicated, further statutory references are to the Code of Civil Procedure.

3.

and 726 (the one form of action rule). She noted that the application form in connection with the short sale had disclosed that B of A may pursue a deficiency judgment unless "prohibited by law." She argued that sections 580e and/or 726 constituted such legal prohibitions. She also argued that B of A had unclean hands, since it took advantage of her financial plight when it consented to the short sale.

The trial court granted B of A's motion for summary judgment. The trial court's written order noted that B of A had set forth sufficient evidence to establish its breach of contract cause of action and that Roberts had failed to show any triable issue of material fact. Further, as to Roberts's assertion of statutory defenses, the trial court explained: "[Roberts] has not shown that [B of A's] cause of action [is] barred by [sections] 580e and/or 726, or prohibited by any other law. [B of A's] participation in a short sale of its collateral in which [B of A] held a junior position and which resulted in payment to [B of A] of less than the amount due under [Roberts's] loan agreement does not bar [B of A] from pursuing this action to recover the deficiency. [Roberts] has not provided evidence to show that [B of A] waived its right to recover a deficiency judgment by releasing its lien on the subject real property as part of the short sale." The formal order granting the summary judgment motion was filed October 5, 2011, including the amount due under the home equity loan of $235,402.47. Judgment was entered based on the order granting the summary judgment motion. Roberts's timely appeal followed.

## DISCUSSION

### I.   Standard of Review

Summary judgment is appropriate when all of the papers submitted show there is no triable issue of material fact and the moving party is entitled to a judgment as a matter of law. (§ 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.)

4.

A plaintiff is entitled to move for summary judgment on the ground that there is no defense to the action.  (§ 437c, subd. (a).)  A plaintiff satisfies its burden of showing there is no defense to the action by presenting evidence sufficient to establish each element of the cause of action entitling plaintiff to judgment.  (*Id.*, subd. (p)(1).)  Once the plaintiff has met that initial burden, the burden then shifts to the defendant to show that a triable issue of material facts exists as to that cause of action or a defense thereto.  (*Ibid.*)

On appeal following a trial court's grant of a summary judgment motion, we determine de novo whether an issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law.  (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601.)  In addition, we review de novo the interpretation or application of a statute.  (*Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1301; *County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, 1322-1323.)

## II.     Summary Judgment Was Properly Granted

We agree with the trial court that B of A met its initial burden as the moving party. It was clearly shown from all the papers presented that (i) Roberts entered the home equity loan as a contractual obligation with B of A, (ii) B of A provided the loan, but Roberts materially defaulted on her repayment obligation, and (iii) said default by Roberts resulted in specified damages to B of A.  Additionally, it was undisputed that Roberts agreed that, after the short sale was completed, she would remain obligated to repay the balance of her home equity loan to B of A.  The elements of a cause of action for breach of contract are (i) the contract, (ii) the plaintiff's performance or excuse for nonperformance, (iii) the defendant's breach, and (iv) damage to the plaintiff.  (*Reichert v. General Ins. Co. of America* (1968) 68 Cal.2d 822, 830.)  We conclude that B of A met its burden of proof as the moving party of establishing the elements of the cause of

action.  Accordingly, the burden shifted to Roberts to show a triable issue of material fact as to the cause of action or a defense thereto.  (§ 437c, subd. (p)(1).)

Roberts primarily argued below, as she does on appeal, that certain statutes precluded B of A from obtaining a deficiency judgment against her.  In particular, she argued that a deficiency judgment was impermissible based on sections 580e and 726.  We now examine her claims that these statutes barred B of A from seeking a deficiency judgment in this case.  We also briefly consider other defenses asserted by Roberts.

### A.    Section 580e

Roberts argues that the recent amendment of section 580e, which took effect in July 2011—over two years after the short sale occurred in this case—should be applied *retroactively* to cover her short sale.  We disagree.

The original version of section 580e provided that no deficiency judgment may be rendered against a homeowner "under a note secured by a *first* deed of trust" (italics added) if the holder of the first deed of trust consented in writing to a short sale and received the proceeds thereof.  In that event, the short sale proceeds received by the holder of the first deed of trust would result in a discharge of the remaining indebtedness. (Stats. 2010, ch. 701, § 1, West's Cal. Sess. Laws, vol. 3, p. 3967.)  In July 2011, section 580e was amended to expand the antideficiency protection in the event of a short sale to *any* deed of trust, including junior lienholders, if the holder of said deed of trust consented to the short sale and received the proceeds of the sale as agreed.  (Stats. 2011, ch. 82, § 1, West's Cal. Sess. Laws, vol. 1, p. 1917, eff. July 15, 2011.)  The amendment was enacted as urgent legislation, taking effect immediately, because the protection was deemed necessary "to mitigate the impact of the ongoing foreclosure crisis and to encourage the approval of short sales as an alternative to foreclosure .…"  (*Ibid*.)

As amended, section 580e, subdivision (a)(1), now provides as follows:  "No deficiency shall be owed or collected, and no deficiency judgment shall be requested or rendered for any deficiency upon a note secured solely by a deed of trust or mortgage for

a dwelling of not more than four units, in any case in which the trustor or mortgagor sells the dwelling for a sale price less than the remaining amount of the indebtedness outstanding at the time of sale, in accordance with the written consent of the holder of the deed of trust or mortgage, provided that both of the following have occurred:  [¶] (A) Title has been voluntarily transferred to a buyer by grant deed or by other document of conveyance that has been recorded in the county where all or part of the real property is located.  [¶]  (B) The proceeds of the sale have been tendered to the mortgagee, beneficiary, or the agent of the mortgagee or beneficiary, in accordance with the parties' agreement."

The issue in the present appeal is whether the amendment to section 580e was intended by the Legislature to apply retroactively to short sales that were completed prior to the effective date of the amendment.  As explained below, we conclude the Legislature did not intend a retroactive application.

"'Generally, statutes operate prospectively only.'  [Citations.]"  (*McClung v. Employment Development Dept*. (2004) 34 Cal.4th 467, 475 (*McClung*).)  "'[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.  Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly ….  For that reason, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal."'  [Citations.]"  (*Ibid*.)  Thus, "statutes ordinarily are interpreted as operating prospectively in the absence of a clear indication of a contrary legislative intent.  [Citations.]  In construing statutes, there is a presumption against retroactive application unless the Legislature plainly has directed otherwise by means of "'express language of retroactivity *or* … other sources [that] provide a clear and unavoidable implication that the Legislature intended retroactive application."'  [Citations.]  Ambiguous statutory language will not suffice to dispel the

7.

presumption against retroactivity; rather "'a statute that is ambiguous with respect to retroactive application is construed … to be unambiguously prospective.'" [Citations.]" (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 955; see also § 3 ["No part of [this code] is retroactive, unless expressly so declared."].)

We see nothing in the language of section 580e to overcome the strong presumption against retroactive application. If anything, the wording of the statute indicates that its protections are directed toward future conduct, since it makes reference to transactions in which "the trustor or mortgagor *sells* the dwelling for a sale price less than the remaining amount of the indebtedness .…" (§ 580e, subd. (a)(1), italics added.) Additionally, in explaining the urgent need for the amendment, the Legislature stated it was seeking "to encourage the approval of short sales as an alternative to foreclosure," thereby indicating the amendment was directed toward future decision making by lenders and homeowners. (Stats. 2011, ch. 82, § 2, West's Cal. Sess. Laws, vol. 1, p. 1917.) This interpretation is further confirmed by the legislative history. In its analysis of the proposed amendment (known as Sen. Bill No. 458), the Assembly Committee on the Judiciary recited with approval the following comment by one of the bill's proponents:

> "'[Senate Bill No.] 458 … adds additional protections against post-short sale deficiency liability to junior note holders (seconds) when those lenders approve a short sale. It is important to note that the short sale process remains voluntary on every participant's part—only lenders that actually agree to the sale will be affected, and sellers that cannot put together an acceptable sale may still go to foreclosure and even bankruptcy.'" (Assem. Com. on Judiciary, com. on Analysis of Sen. Bill No. 458 (2010-2011 Reg. Sess.) June 28, 2011, p. 3.)

In summary, not only do the language and history of the amendment fail to show any intent by the Legislature to make the new provision retroactive, but to the contrary, every indication is that it was understood to be prospective only.

Furthermore, the fairness rationale for the presumption against retroactive application of a statute is especially compelling here, where a past contractual transaction

8.

was agreed to under the law in effect at that time. It would be unfair to change the legal effect and consequences of that transaction retroactively. As noted by a federal district court addressing this very issue: "The practical effect [of] interpreting the statute as Plaintiffs suggest would be to extinguish the rights to deficiency balances negotiated between parties prior to the enactment of section 580e." (*Espinoza v. Bank of America, N.A.* (S.D.Cal. 2011) 823 F.Supp.2d 1053, 1058 [holding amendment to § 580e is not retroactive].) For all of these reasons, we conclude that the amendment to section 580e does not apply retroactively and, therefore, does not cover Roberts's short sale.[3]

## B. Section 726

Roberts contends that B of A was barred from pursuing a deficiency judgment against her based on section 726, the one-form-of-action rule. She argues that under section 726, judicial foreclosure was the only form of action allowable for collecting on a debt secured by real estate, and inasmuch as B of A chose not to pursue a foreclosure action, it is barred from obtaining a deficiency judgment. B of A responds that in light of the agreed short sale, in which B of A consented to release its lien only and Roberts agreed to remain personally liable on the loan, section 726 was not applicable. We agree with B of A.

---

[3] At oral argument, Roberts claimed that regardless of retroactivity, the amendment to section 580e applied in her case because, at the time the amendment went into effect, there was not yet a deficiency judgment entered against her. We disagree. It is the date of the *short sale*, not the date a deficiency is sought, which determines this issue. As we have explained in our discussion herein of nonretroactivity, the amendment to section 580e was intended to facilitate or encourage the approval of *future* short sales as an alternative to foreclosure, not to extinguish contractual rights negotiated in the past. Thus, the amendment applies to short sales occurring *after* the amendment took effect, not to those that had already occurred. (See *Espinoza v. Bank of America, N.A.*, *supra*, 823 F.Supp.2d at pp. 1057-1058.) A new case that Roberts cited at oral argument, *Rahoi v. JPMorgan Chase Bank, N.A.* (N.D.Cal. June 12, 2013, No. 12-CV-03756-LHK) ___ F.Supp.2d ___ [2013 U.S.Dist. Lexis 83571 at pp. *38-39, fn. 16], does not support Roberts's position; instead, footnote 16 agrees with our conclusion on this issue.

We begin by reviewing the broader context and purpose of section 726. "'[D]uring the [G]reat [D]epression with its dearth of money and declining property values, a mortgagee was able to purchase the subject real property at [a] foreclosure sale at a depressed price far below its normal fair market value and thereafter to obtain a double recovery by holding the debtor for a large deficiency.' [Citation.] Accordingly, California enacted an interrelated set of foreclosure and antideficiency statutes to protect debtors. [Citation.]" (*National Enterprises, Inc. v. Woods* (2001) 94 Cal.App.4th 1217, 1225.) Section 726 is part of that statutory framework and it operates alongside antideficiency statutes such as section 580d. (*Walker v. Community Bank* (1974) 10 Cal.3d 729, 733.) Section 726 provides, in part, as follows: "There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter." (§ 726, subd. (a).) The one form of action is a foreclosure action (*Shin v. Superior Court* (1994) 26 Cal.App.4th 542, 545), in which the creditor must first exhaust the security before seeking any monetary judgment for the deficiency (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 997 (*Security Pacific*)).

"Pursuant to this statutory scheme, there is only 'one form of action' for the recovery of any debt or the enforcement of any right secured by a mortgage or deed of trust. That action is foreclosure, which may be either judicial or nonjudicial. [Citation.] In a judicial foreclosure, if the property is sold for less than the amount of the outstanding indebtedness, the creditor may seek a deficiency judgment, or the difference between the amount of the indebtedness and the fair market value of the property, as determined by a court, at the time of the sale. [Citation.] However, the debtor has a statutory right of redemption, or an opportunity to regain ownership of the property by paying the foreclosure sale price, for a period of time after foreclosure. [Citations.] [¶] In a nonjudicial foreclosure, also known as a 'trustee's sale,' the trustee exercises the power

of sale given by the deed of trust.  [Citations.]  Nonjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, '[n]either appraisal nor judicial determination of fair value is required,' and the debtor has no postsale right of redemption.  [Citation.]  However, the creditor may not seek a deficiency judgment.  [Citation.]  Thus, the antideficiency statutes in part 'serve to prevent creditors in private sales from buying in at deflated prices and realizing double recoveries by holding debtors for large deficiencies.'  [Citation.]"  (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236.)

"'As judicially construed, section 726 is both a "security-first" and "one-action" rule:  It compels the secured creditor, in a single action, to exhaust his security judicially *before* he may obtain a monetary "deficiency" judgment against the debtor.'  [Citations.]  In other words, '[a] secured creditor can bring only one lawsuit to enforce its security interest and collect its debt.'  [Citation.]"  (*National Enterprises, Inc. v. Woods*, *supra*, 94 Cal.App.4th at p. 1232, fn. omitted.)  The two fundamental purposes of section 726 are "(1) preventing a multiplicity of lawsuits against the debtor, and (2) requiring exhaustion of the security before a resort to the debtor's unencumbered assets."  (*Security Pacific*, *supra*, 51 Cal.3d at p. 1005.)

Our Supreme Court has explained that "the operation of section 726 is in large part within the control of the debtor."  (*Security Pacific*, *supra*, 51 Cal.3d at p. 1004.)  "If a secured creditor brings an action on the debt before foreclosing the security, the debtor can interpose section 726 as an affirmative defense, thereby requiring the creditor to exhaust the security before he may obtain a money judgment against the debtor.  If the debtor does not raise the statute as an affirmative defense, the creditor's action on the debt is allowed to proceed to judgment.  The creditor, however, is precluded from thereafter foreclosing on the security.  He is deemed to have elected his remedy. [Citations.]"  (*Id*. at pp. 1004-1005.)  A debtor also may waive the protections afforded by section 726.  (*Security Pacific*, *supra*, at p. 1005.)

11.

There are a number of contexts in which section 726 is not applicable.  For example, where nonjudicial foreclosure is pursued, there is no court "action" and therefore section 726 does not apply, but in that case antideficiency legislation would preclude an action for a deficiency.  (*Walker v. Community Bank*, *supra*, 10 Cal.3d at p. 736; *National Enterprises, Inc. v. Woods*, *supra*, 94 Cal.App.4th at p. 1232, fn. 9.)  Another instance in which section 726 is not applicable is with respect to a sold-out junior lienor:  "'The prohibition against a deficiency judgment does not apply to the beneficiary of a junior deed of trust whose security has been rendered valueless by a foreclosure sale of the property under a senior encumbrance.  After the security has been lost by the foreclosure sale of the senior lien, the junior lienor can sue the debtor directly on the promissory note, which is then considered unsecured.'"  (*Bank of America v. Graves* (1996) 51 Cal.App.4th 607, 612.)  Similarly, section 726 does not apply where bringing a foreclosure action would be an idle act because the security has become worthless.  (*Pacific Valley Bank v. Schwenke* (1987) 189 Cal.App.3d 134, 140.)  Finally, we note that a debtor can waive the protection of section 726 by failing to insist that the creditor first proceed against the security (*Security Pacific*, *supra*, 51 Cal.3d at p. 1005), or by consenting to an arrangement in which the beneficiary of the trust deed relinquishes the security without retiring the note (*Pacific Valley Bank v. Schwenke*, *supra*, at pp. 141-142).

Here, B of A could have withheld consent to the short sale requested by Roberts.  In that event, presumably the holder of the first deed of trust would have completed foreclosure, leaving B of A (as a sold-out junior lienor) entitled to sue for the balance due on the home equity loan.  (See *Bank of America v. Graves*, *supra*, 51 Cal.App.4th at p. 612 [§ 726 inapplicable to sold-out junior lienor].)  Instead, B of A granted Roberts's short sale request on the condition that Roberts would continue to be responsible to repay the home equity loan to B of A.  Roberts agreed to that condition.  B of A then released its lien so the sale of the real property could take place.  Under these circumstances,

section 726 did not apply because Roberts asked for and consented to the short sale arrangement and thereby *waived* any rights she may have had under that statute. (See *Security Pacific*, *supra*, 51 Cal.3d at p. 1005; *Pacific Valley Bank v. Schwenke*, *supra*, 189 Cal.App.3d at pp. 141-142.) Since Roberts sought and obtained B of A's consent for a short sale that required the release of B of A's second deed of trust, she may not be heard to complain that B of A did not bring a foreclosure action against her. In so holding, we note that the primary purposes of section 726 were not thwarted by the short sale arrangement in this case. The sale of the security (the real property) was used to pay off the amount secured by the first deed of trust and a small portion of the amount due to B of A under the home equity loan. Thus, the security was in fact exhausted. Additionally, the short sale arrangement did not subject Roberts to a multiplicity of lawsuits, since a short sale is not itself an "action" (see § 22 [defining "action"]), and no action was filed against Roberts until she subsequently defaulted on the home equity loan. In conclusion, we agree with B of A that section 726 did not preclude its action to recover amounts due under the home equity loan.

### C.     The Federal Troubled Asset Relief Program

Roberts next presents the following theory: "In its 2008 contract with the United States Department of the Treasury, under the Troubled Asset Relief Program ('TARP' …), [B of A] contractually obligated [itself] to modify mortgages 'as appropriate to strengthen the health of the U.S. housing market,' in exchange for receiving $45 billion in taxpayer bailout loans. Roberts asserts that she is a third-party beneficiary of [B of A's] TARP contract with the United States of America Department of the Treasury …."

We reject Roberts's argument for several reasons. First, it was not presented to the trial court, but was raised for the first time in this appeal. "'[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.' Thus, 'we ignore

13.

arguments, authority, and facts not presented and litigated in the trial court. Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived. [Citations.]'" (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11, fns. omitted.) Here, Roberts did not assert this argument in the trial court at the time of the summary judgment motion, but she attempts to assert it now based upon facts or documents that are outside of the record. As noted, we shall not consider this new argument as it was waived by failure to raise it below.[4]

Second, we reject Roberts's argument because she has failed to provide adequate citation to statutory or case authority to support her theory that B of A's TARP contract with the federal government could conceivably provide a defense to B of A's action herein. Where a point lacks adequate legal discussion or citation to authority, we may treat it as abandoned. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522-523; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700; *People v. Stanley* (1995) 10 Cal.4th 764, 793.)

Third, even if the argument had not been waived, we would reject Roberts's argument on substantive grounds. The TARP was established as part of the Emergency Economic Stabilization Act (EESA), found at title 12 of the United States Code sections 5201 to 5261, and was to be implemented by the United States Department of the Treasury. (See 12 U.S.C. § 5211.) The EESA, including various programs created under it such as the Making Home Affordable Program and the Home Affordable Modification Program (HAMP), has been consistently construed to create no private rights or private causes of action on the part of borrowers. (*Miller v. Chase Home Finance, LLC* (11th Cir. 2012) 677 F.3d 1113, 1116 [no private right of action; EESA not for homeowner's special benefit]; *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012) 673

---

**4**      For these reasons, we deny Roberts's motion for judicial notice, which includes copies of the TARP agreements.

F.3d 547, 559, fn. 4 [collecting cases rejecting third party beneficiary claims]; *Lucia v. Wells Fargo Bank, N.A.* (N.D.Cal. 2011) 798 F.Supp.2d 1059, 1070-1071.) For all of these reasons, we reject Roberts's alleged defense based upon TARP and/or B of A's contract with the Department of the Treasury under that federal program.

### D. No Unclean Hands

Roberts argues that the trial court should have applied the doctrine of unclean hands as a complete defense to B of A's action on the home equity loan. We disagree.

"The [unclean hands] doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands … or he will be denied relief, regardless of the merits of his claim." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978.) "The doctrine of unclean hands requires unconscionable, bad faith, or inequitable conduct by the plaintiff in connection with the matter in controversy. [Citations.] Unclean hands applies when it would be inequitable to provide the plaintiff any relief, and provides a complete defense to both legal and equitable causes of action." (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 56.) The plaintiff's misconduct must be of such a prejudicial nature that it would be unfair to grant him the relief he seeks in court. (*Soon v. Beckman* (1965) 234 Cal.App.2d 33, 36.) "Whether the defense applies in particular circumstances depends on the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries. [Citation.]" (*Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 447.) The defense applies only "where it would be inequitable to grant the plaintiff *any* relief." (*Ibid*.) "The decision of whether to apply the defense based on the facts is a matter within the trial court's discretion." (*Ibid*.)

Here, the sole ground for Roberts's claim of unclean hands was that B of A had become aware of Roberts's financial hardship during the negotiation of the short sale and, as a result, B of A allegedly must have unfairly coerced Roberts to enter the short sale arrangement. The record does not support such a conclusion. There was no evidence of

a coercive or unconscionable transaction in this case. Moreover, there was nothing inequitable or prejudicial to Roberts regarding the terms of the short sale arrangement. B of A consented to the short sale, as requested by Roberts, subject to the understanding that Roberts would remain responsible to repay the home equity loan. No adequate basis for the unclean hands defense has been shown.

### E.  No Triable Issues of Fact

Finally, Roberts argues there was a triable issue of fact that precluded the granting of summary judgment. In support of this contention, she relies on a word processing error in B of A's separate statement indicating that the holder of the first deed of trust had *foreclosed*. It is evident to this court that neither party relied on that error, and that both parties clearly understood the real property was sold via a short sale. The error was promptly corrected in B of A's reply. Roberts has failed to show a triable issue of fact. (See § 475.)

### DISPOSITION

The judgment of the trial court is affirmed. Costs on appeal are awarded to B of A.

_____

Kane, J.

WE CONCUR:

_____

Wiseman, Acting P.J.

_____

Franson, J.