Filed 2/11/14  Marriage of Ware CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of TAMMY L. and DANIEL M. WARE. | |
| TAMMY L. WARE,<br><br>        Appellant,<br><br>                v.<br><br>DANIEL M. WARE,<br><br>        Respondent. | F064420<br><br>(Super. Ct. No. VFL 193531)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Jennifer Shirk, Judge.

McCormick, Barstow, Sheppard, Wayte & Carruth, Todd W. Baxter for Appellant.

Allen Law Firm, David W. Allen for Respondent.

-ooOoo-

Tammy L. Ware and Daniel M. Ware were married in 1989 and their marital status was terminated in 2011.  In this appeal, Tammy[1] challenges the trial court's ruling

---

[1]Because the parties share a last name, we will refer to them by their first names for clarity and convenience.  No disrespect is intended.

that December 1, 2000, was the date of separation for community property purposes. That date was specified as the date of separation in a stipulated judgment of dissolution of marriage filed in 2002. Tammy contends the stipulated judgment is void because it was not signed by the parties and, as a factual matter, the date of separation should be much later because the parties were reconciled and living together for many years after the stipulated judgment was filed. She asks this court to vacate the stipulated judgment and to direct the trial court to conduct a new hearing to determine the date of separation.

We affirm the court's ruling and judgment.

## FACTS AND PROCEDURAL HISTORY

### 2000 to 2009—petition for dissolution of marriage, settlement agreement, and apparent reconciliation

On December 4, 2000, Tammy filed a petition for dissolution of marriage. Under "Statistical Facts," she alleged the date of marriage was February 26, 1989, and the date of separation was December 1, 2000.

On December 15, 2000, the court ordered Tammy and Daniel to have joint legal custody of their child, with Tammy to have primary physical custody. Tammy was to remain in the home and was responsible for mortgage payments and utilities as of December 1, 2000. Daniel was to pay Tammy $675 per month for child support and $825 per month for spousal support. A notice to Daniel's employer, the California Department of Corrections, to withhold $1,500 per month for child and spousal support was filed on January 31, 2001.

On April 12, 2001, Daniel filed a response and request for dissolution of marriage. He also alleged the date of separation was December 1, 2000.

On October 11, 2001, the parties attended a mandatory settlement conference and reached an agreement. Tammy, her attorney John Bianco, and Daniel's attorney James Wainwright appeared before the court to enter a stipulated judgment. Daniel was not

2.

present, but Wainwright told the court his client had given him authorization to enter into the agreement.

Bianco told the court the parties had agreed to spousal support, a division of property and a child custody arrangement, but they requested the court not rule on status. Wainwright explained there was a possibility of reconciliation and the parties wanted to get the property and support issues out of the way.

The court warned the attorneys and Tammy:

"Let me tell you some of the problems we have had so there is no misunderstanding. [¶] Once this judgment gets accepted and gets entered and the assumption is it's going to get prepared and entered real quick after it's recited. [¶] [I]f they reconcile, the judgment doesn't go away. The judgment stands there."

Bianco then recited the terms of the parties' agreement and stated that he would prepare the judgment. He described custody and visitation, spousal support, and division of property. He did not specify the date of separation. Upon questioning from the court, Tammy agreed she had reached the agreement voluntarily. The court asked Tammy if she understood that if the court accepted the agreement that day, she could not change her mind later, and "this is going to be a full, final and complete agreement today." Tammy said yes. The court asked, "You are giving up your right to have a judge equally divide your assets and debts. Do you understand that?" Tammy responded, "Right."

Wainwright told the court that he had discussed all the terms and conditions with Daniel and he was aware of the ramifications. The court accepted the agreement reached between the parties, finding it had been entered into knowingly, voluntarily, and with the assistance of counsel.

On January 15, 2002, Bianco submitted a "Judgment of Dissolution of Marriage" and "Notice of Entry of Judgment" to the court for filing.

On January 18, 2002, Bianco filed a declaration with the trial court. He stated that, shortly after October 11, 2001, his office prepared a "Notice of Entry of Judgment"

3.

and "Judgment of Dissolution of Marriage" that accurately reflected the terms of the settlement read into the record. On December 7, 2001, Tammy told Bianco's office that she and Daniel had reconciled. On December 12, 2001, Bianco wrote a letter to Tammy advising her that if she wished to set aside the judgment of dissolution of marriage, she must file a motion requesting it. The letter further explained that signing the written judgment was "simply a formality" and failure to sign it would not set aside the stipulation she had already made in court. Bianco asked her to schedule an appointment to discuss the status of her divorce. As of January 14, 2002, Tammy had not contacted Bianco's office.

Also on January 18, 2002, Bianco filed a notice of withdrawal of attorney, giving notice that he no longer would represent Tammy in the dissolution proceeding. On January 22, 2002, Wainwright gave notice of his withdrawal as attorney for Daniel.

It appears that a clerk at the superior court returned the "Judgment of Dissolution of Marriage" on January 29, 2002, because the parties' signatures were missing. On February 13, 2002, however, the trial court signed the "Judgment of Dissolution of Marriage," and the judgment was filed with the court. The court sent notice of entry of judgment to Tammy, care of Bianco, and to Daniel, care of Wainwright.

The judgment consists of a two-page Judicial Council form, "Judgment (Family Law)," followed by 11 pages of typed settlement terms.[2] On the first page of the Judicial Council form, in the section titled "Judgment," boxes are checked for "Dissolution" and "Reserving jurisdiction over termination of marital status." The second page of the form provides that the 11-page attachment "shall be merged and incorporated with the Judgment of Dissolution of Marriage, Reserving Jurisdiction [O]ver Termination of Marital Status."

---

[2]This 13-page document is what the parties and this court refer to as the "stipulated judgment."

4.

The 11-page attachment was signed by Bianco and Wainwright (before they gave notice of withdrawal), but was not signed by Tammy or Daniel. The first page of the 11-page attachment includes the statement, "The parties were married on February 26, 1989, and separated on December 1, 2000, after eleven (11) years, ten (10) months of marriage." It further provides, "It is the parties['] intent to enter into an agreement that is a final and complete settlement of all their rights and obligations, including property rights and property claims, … subject to the continuing jurisdiction of the Superior Court." Among other settlement terms, Daniel was to pay Tammy $825 per month for spousal support.

On July 12, 2004, a notice to Daniel's employer terminating the withholding of income for child and spousal support was filed with the court.

### 2010 to 2012—request for modification of spousal support and termination of marital status

The next activity in the case occurred in 2010. Tammy, through her new attorney Mary Rafani-Steele, filed a request for modification of spousal support on November 23, 2010. In making the request, she referred to the spousal support previously ordered "as part of the judgment of dissolution of marriage entered February 13, 2002." She continued, "This judgment affected all matters apart from termination of marriage, jurisdiction of which was reserved to the court." Tammy explained that the parties had reconciled and continued to live together as husband and wife until February 2010. She requested the court take judicial notice of the stipulated judgment. Tammy noted that, according to section 11 of the stipulated judgment, "in the event of reconciliation all orders remain in effect until modified or revoked by a subsequent court order."[3] Since no

---

[3]Paragraph 11 of the stipulated judgment provides: "If the parties, at any time, reconcile after the effective date of this agreement, this agreement, including all property transfers made or agreed to be made, shall remain in effect until modified or revoked by a subsequent court order signed by each party and specifying the fact of reconciliation."

subsequent order was ever sought by either party, Tammy requested a determination of spousal support arrearages.

On December 3, 2010, the trial court ordered Daniel to pay rent for a one-bedroom apartment for Tammy for December and January. Daniel was also ordered to pay Tammy $800 per month. Daniel was given exclusive use of the residence on Ashland Court.

On the same day, Tammy filed an "Ex Parte Move-Out Order." She sought an order that Daniel move from the family home or pay her an amount sufficient to rent her own residence. Tammy also sought payment from Daniel of "an amount sufficient to cover her necessary expenses incurred during the time of the separation to date as per agreement between the parties, later abrogated by [Daniel]."

On December 29, 2010, Daniel filed a responsive declaration. He did not consent to Tammy's request that he move. In his declaration, Daniel stated that he and Tammy separated on December 1, 2000. He stated that they signed a stipulated judgment in February 2002. (The parties actually did not sign the agreement, but Tammy never informed the court of this.) Daniel did not remember why they had the court reserve jurisdiction on the termination of marital status. In the stipulated judgment, Tammy was granted the family residence and associated debt. She did not make the payments and the house was foreclosed on. Daniel bought another residence after the separation. He "allowed Ms. Ware to move into [his] residence and at that time she terminated the wage assignment" (referring to the order to his employer to withhold child/spousal support). According to Daniel, Tammy moved out in December 2009 when her boyfriend showed up at Daniel's house. Between 2009 and November 24, 2010, Daniel would allow Tammy to come to his residence to do laundry and eat, and he told her she could stay. On November 24, 2010, Daniel caught Tammy in his house with her boyfriend, and Daniel changed the locks so she could not come back into his house.

6.

In a declaration by Rafani-Steele filed on January 14, 2011, she declared that Daniel reported that Tammy had "cleaned out" his house. He claimed that Tammy and seven others brought a moving van to his house and removed everything except his clothing. In contrast, Tammy maintained that on January 11, 2011, she only took her clothes, personal items from the bathroom, her bed set, her daughter's wedding pictures, and one of three televisions in the house. Tammy said only two men helped her move, although they were professional movers. Tammy later described her conduct of taking items from the house as "the use of self-help measures, which I now regret." On January 14, 2011, the court ordered the parties to stay 100 yards from each other and continued the matter. The court also ordered that Tammy was to keep the bedroom furniture and Daniel was to make a list of items taken from his house to be returned by Tammy by noon on January 15, 2011.

On January 21, 2011, the court ordered Daniel to comply with the current order for spousal support. Because Tammy had failed to comply with the court's order to return Daniel's property by January 15, the court ordered Tammy to return Daniel's property by noon on January 22, 2011. If she failed to return the property by that day, she was to be sanctioned $50 each day until the property was returned.

On February 23, 2011, the court heard testimony from Tammy and Daniel on Tammy's request for a modification of spousal support. Following the testimony, Rafani-Steele argued that Daniel should pay $2,500 per month in spousal support. She asserted the marriage lasted 22 years. Daniel's attorney, David Allen, disagreed with Rafani-Steele's characterization that the marriage lasted over 20 years. Allen argued that the parties separated on December 1, 2000, and entered into a stipulated judgment on assets and debts. He pointed out that, in the stipulated judgment, the parties reserved jurisdiction on the issue of marital status, not on the date of separation.

The court asked if the parties wanted to terminate their marital status that day. Rafani-Steele stated there were still issues of asset and debt disclosure. The court

7.

reminded the parties that there already was a judgment—the stipulated judgment filed in 2002—which addressed the division of community property and set the date of separation.

The parties agreed to stipulate to termination of marital status effective May 31, 2011, but they disagreed on the date of separation. Rafani-Steele told the court, "[T]here is an issue as to date of separation which goes to division of the retirement." The court responded that Tammy would need to file a motion and educate the court about what her position was.

The day after the hearing, the court ruled on Tammy's request for modification of spousal support, ordering Daniel to pay Tammy $1,250 per month for February and March 2011 and then $1,000 per month beginning in April 2011.

On March 25, 2011, Tammy filed a pleading on joinder for an employee benefit plan incorrectly identified as "State of California 401k Thrift Plan." On May 9, 2011, the Department of Personnel Administration, Savings Plus Program, filed a notice of appearance and response to the notice of joinder.

On March 30, 2011, Tammy sought an order from the court for $1,450 in past-due spousal support. On April 13, 2011, she filed a reply declaration and request for temporary exclusive use of the "marital home." She declared that she was being evicted and she would be unable to secure housing. To establish her claim to the house, Tammy attached to her declaration a copy of an interspousal grant deed appearing to show that, on November 16, 2006, Daniel conveyed the house on Ashland Court to himself and Tammy, "husband and wife, as joint tenants with right of survivorship." Also attached to her declaration were copies of tax returns for years 2004 through 2009 indicating that Daniel and Tammy filed their federal income taxes under the status "married filing jointly." On April 14, 2011, the court denied Tammy's request for exclusive use of the house and again ordered Daniel to pay $1,000 per month in spousal support.

On November 21, 2011, the parties and their attorneys again appeared before the court. Allen had prepared a judgment terminating marital status as the parties had agreed to on February 23, 2011, but Rafani-Steele would not sign it because it included a recitation of December 1, 2000, as the date of separation. Rafani-Steele asserted that the parties reconciled after the stipulated judgment was entered and they were together for another 10 years. She told the court it had been her intention to file a motion "to [obtain] a ruling on the date of separation," and she had been trying to contact Tammy to "get moving on that …." It does not appear from the record, however, that Tammy ever filed a motion explaining her position on what the date of separation should be or why the date of separation specified in the stipulated judgment should be ignored.

On November 30, 2011, the court held a hearing set as "an order to show cause why the judgment should not be processed." Rafani-Steele said the only reason for the hearing was "to put on paper the judgment that was indicated on the record on February 23rd," but there were still pending property issues. She stated, "The Court well knows that we have an issue pending with regard to the date of separation and retirement plans which were not disposed of in the initial judgment." On December 1, 2011, the court issued a ruling. It provided:

> "The Court finds that the parties were married on February 26, 1989, and separated on December 1, 2000. The parties entered into an agreement incorporated into a Judgment of Dissolution filed February 13, 2002. That Judgment solely reserves jurisdiction over marital status. Both parties were represented by counsel at the time of dissolution. Attorney John Bianco's declaration states that he advised Wife that if she and Husband reconciled and wished to remain married, they would need to file a Stipulation to Set Aside the Judgment. No Stipulation was ever filed. For community property purposes, the Court finds the Date of Marriage to be February 26, 1989, and the Date of Separation to be December 1, 2000, as set forth in the Judgment of Dissolution. The parties stipulated that marital status would terminate May 31, 2011."

The same day, a judgment of dissolution was entered nunc pro tunc as of February 23, 2011, terminating the marital status of the parties.

9.

On January 30, 2012, Tammy filed a notice of appeal.

## *DISCUSSION*

Tammy claims that the stipulated judgment filed in 2002 is void because it did not comply with the requirements of Code of Civil Procedure section 664.6.[4] As a consequence, she contends, the court's ruling of December 1, 2011, which relied on the stipulated judgment, must be set aside. Tammy never raised the issue of noncompliance with section 664.6 to the trial court. Normally, we do not consider claims raised for the time on appeal (*Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1399-1400), but we address Tammy's contention that the stipulated judgment is void because void judgments are subject to direct or collateral attack at any time. (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1226.)

Daniel responds that the stipulated judgment is not void on its face. Rather, it is a valid judgment that can only be challenged by a motion to set aside the judgment filed within a reasonable time, which Tammy failed to do.

## I.    *The stipulated judgment does not comply with section 664.6*

As a preliminary matter, we consider whether Tammy is correct that the stipulated judgment in this case did not comply with section 664.6. "Section 664.6 governs the entry of judgment pursuant to the terms of a settlement agreement." (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 583 (*Levy*).) The statute provides:

> "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment

---

[4]Subsequent statutory references are to the Code of Civil Procedure unless otherwise noted.

10.

pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (§ 664.6.)

It is settled that "parties" as used in section 664.6 means the litigants personally, not their attorneys. (*Levy*, *supra*, 10 Cal.4th at p. 586.) Here, the stipulated judgment did not satisfy the requirement of a "writing signed by the parties outside the presence of the court" because it was not signed by Tammy or Daniel personally.

Daniel notes that section 664.6 also provides for stipulation to settle "orally before the court," and Tammy appeared before the court and orally stipulated to the settlement terms recited by Bianco. Therefore, Daniel argues, the requirements of section 664.6 were met with respect to Tammy, and the stipulated judgment is enforceable against her.[5] We agree that Tammy could not avoid her stipulation to settlement terms made orally before the court by later refusing to sign an agreement that reduced her stipulation to writing. (See *Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421, 1431 ["Having orally agreed to settlement terms before the court, parties may not escape their obligations by refusing to sign a written agreement that conforms to the oral terms."].) If the trial court had not filed the stipulated judgment in this case, however, it is not clear to us that Daniel, who neither orally agreed to the settlement terms nor signed the written stipulation, would have been able to enforce the settlement agreement. (*Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1256-1257 [party that had neither orally consented to settlement before court nor given written consent by signing writing attached to reporter's transcript of settlement was not entitled to enforce settlement agreement against parties who had orally consented].) Further, we observe that the date of separation was not among the settlement terms Bianco recited to the court and Tammy agreed to. Tammy also identifies other settlement terms that appear in the stipulated

---

[5]Daniel, in contrast, did not stipulate to settle either orally before the court or in a signed writing.

judgment but had not been stated by Bianco in court. For example, the stipulated judgment includes child-custody terms that Bianco did not describe at the hearing on October 11, 2001. Thus, the stipulated judgment did not simply reduce to writing the settlement terms that Tammy had orally agreed to. For these reasons, we conclude the stipulated judgment—which was not signed by the parties and contained terms Tammy did not orally agree to before the court—did not comply with the requirements of section 664.6.

## II.     *Failure to comply with section 664.6 does not render the stipulated judgment void*

In apparent error, the trial court judge nonetheless signed the stipulated judgment on February 13, 2002, and it became the judgment of dissolution of marriage in this case when it was filed the same day. The issue before us is whether noncompliance with section 664.6 rendered the ensuing stipulated judgment void as Tammy contends or valid until set aside as Daniel claims.

A judgment is void when the "court lacks jurisdiction in a fundamental sense .…" (*People v. American Contractors Indemnity Co*. (2004) 33 Cal.4th 653, 660 (*American Contractors*).) Lack of jurisdiction in a fundamental sense means "'an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties,'" and a resulting void judgment is subject to direct or collateral attack at any time. (*Ibid*.)

On the other hand, when a court has fundamental jurisdiction, but acts contrary to law, it is said to have exceeded its jurisdiction. (*American Contractors*, *supra*, 33 Cal.4th at p. 661.) "When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside

12.

by 'principles of estoppel, disfavor of collateral attack or res judicata.'"**6** (*Ibid.*) For example, in *Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1083-1084, the probate court granted an ex parte petition and appointed a new conservator to an estate without complying with certain notice and investigation requirements of the Probate Code. Later, a surety attempted to avoid liability for the new conservator's embezzlement by claiming the court's order appointing the new conservator was void because it was made in violation of various Probate Code sections. (*O'Connor, supra,* at p. 1087.) The Court of Appeal rejected the surety's claim that the court's appointment order was void, concluding the probate court had jurisdiction over the matter and failure to comply with statutory procedure did not deprive the probate court of jurisdiction. (*Id.* at pp. 1088-1092.) Further, the surety was estopped to challenge the appointment order because its course of conduct manifested consent to the appointment. (*Id.* at p. 1092.)

Here, since Tammy filed a petition for dissolution and Daniel appeared and filed a response, the trial court clearly had jurisdiction over the subject matter and the parties. Tammy does not claim otherwise, and, by her requests to the court to modify and enforce the stipulated judgment, she implicitly acknowledged the court has jurisdiction over the parties with respect to matters related to the dissolution of their marriage.

Accordingly, the trial court had fundamental jurisdiction. It is true that the trial court entered the stipulated judgment despite the lack of the parties' signatures, contrary

---

**6**At oral argument, Tammy's attorney claimed that Daniel neither raised the argument that the stipulated judgment was voidable nor cited *In re Andres G.* (1998) 64 Cal.App.4th 476 in his appellate brief. This is not correct. On page eight of his appellate brief, Daniel cited *In re Andres G.* and asserted that, "When a judgment is not void on its face and the defect consists only of an act in excess of the court's jurisdiction, it is valid until the judgment is set aside." While it is true that Daniel did not use the term "voidable," he raised the issue that the stipulated judgment was an act in excess of the court's jurisdiction and was therefore valid until it was set aside. As we see from *American Contractors*, this is the very definition of a voidable judgment. Accordingly, Daniel sufficiently raised the issue that the stipulated judgment was voidable, and we deny Tammy's request for leave to file supplemental briefing on the issue.

to the requirements of section 664.6. The trial court's failure to comply with the statutory procedures of section 664.6, however, did not deprive it of jurisdiction. (See *Conservatorship of O'Connor*, *supra*, 48 Cal.App.4th at pp. 1090-1092.) Rather, the entry of the stipulated judgment was an act in excess of jurisdiction and was valid until set aside. (See *American Contractors*, *supra*, 33 Cal.4th at p. 661.)

In support of her position that the stipulated judgment is void, Tammy relies on *Davidson v. Superior Court* (1999) 70 Cal.App.4th 514 (*Davidson*). In *Davidson*, the City of Mendota filed a civil action seeking an injunction against the petitioners prohibiting them from operating a junkyard on their land. The case purportedly settled in 1987 with a "Stipulation for Settlement and Entry of Order" signed by the petitioners' attorney but not the petitioners personally. Under the stipulated order, the petitioners agreed to stop their junkyard activities. In 1991, the city initiated contempt proceedings against the petitioners. (*Id*. at p. 518.) The petitioners moved to rescind the stipulated order arguing, among other things, that the stipulation was not binding because they did not personally sign it. (*Id*. at pp. 518-519.) The contempt action and rescission motion were set for hearing on the same day, but an issue raised in the rescission motion was deferred. The petitioners claimed that they never gave their former attorney authority to sign the stipulation on their behalf, but the court deferred the issue of attorney authority because there was no time to take testimony. (*Id*. at p. 519.) The petitioners' rescission motion was later denied without resolution of the authority issue. The petitioners filed an appeal, which the appellate court denied, noting that the question whether petitioners' former attorney had authority to settle on their behalf was not before the court. (*Id*. at p. 520.)

In 1995, the city again initiated contempt proceedings, and the petitioners were found in contempt of the stipulated order. (*Davidson*, *supra*, 70 Cal.App.4th at p. 520.) The petitioners attempted to set a jury trial on the issue of whether their former attorney had authority to agree to the 1987 settlement and stipulated order. Their request for a

14.

trial was denied as untimely. They filed an appeal of the denial order, which was dismissed as an appeal of a nonappealable order. (*Id*. at p. 521.) The petitioners were sentenced to five days in jail. The petitioners then filed a writ of habeas corpus. (*Id*. at p. 522.)

The *Davidson* court granted the petitioners relief, citing section 664.6 and *Levy*, *supra*, 10 Cal.4th 578. Because the 1987 stipulated agreement was not signed by the parties, the court reasoned, "[T]he judgment obtained by the City of Mendota behind the purported settlement agreement is void for purposes of enforcement in contempt proceedings premised on its violation." (*Davidson*, *supra*, 70 Cal.App.4th at p. 517, italics omitted.) The court also observed that the petitioners had never been able to obtain a trial on their claim that their former attorney lacked authority to bind them to the settlement agreement. (*Ibid*.)

*Davidson* is distinguishable for many reasons. First and foremost, the case involved a contempt proceeding, and the rule in California is that a contemnor "'may, for the first time, collaterally challenge the validity of the order he or she is charged with violating.'" (*Davidson*, *supra*, 70 Cal.App.4th at pp. 529-530, fn. 2.) Although the *Davidson* court described the stipulated order as "void" for purposes of the contempt proceeding, it did not hold that the failure to comply with section 664.6 meant the trial court lacked fundamental jurisdiction. To the contrary, the court concluded that "the 1987 stipulated order was *in excess of the court's jurisdiction* because it was not entered in compliance with section 664.6 or some other settlement enforcement mechanism." (*Davidson, supra,* at p. 529, italics added.)

Second, the procedural history of the case was complicated and unusual. Among other things, the California Supreme Court decision in *Levy*, *supra*, 10 Cal.4th 578, holding that section 664.6 requires the litigants' signatures, came out in 1995, after the stipulated order was entered but before the contempt proceeding. Because of this intervening law, the *Davidson* court ignored the doctrine of law of the case, which would

15.

have barred the petitioners from challenging the validity of the stipulated order again. (*Davidson*, *supra*, 70 Cal.App.4th at p. 530.)  Further, the petitioners' attempts to adjudicate the issue of attorney authority had been "thwarted at every turn" by the courts. (*Id*. at p. 518.)

Third, the petitioners at no time acquiesced to the stipulated order.  They steadfastly argued that the stipulated order was invalid and raised the issue of the lack of party signatures at the first contempt proceeding.  (*Davidson*, *supra*, 70 Cal.App.4th at pp. 518-519.)

Here, in contrast, there was no intervening change in the law, and the procedural history in this case, while spanning many years, is not complex.  Tammy, unlike the petitioners in *Davidson*, has not been consistent in her stance regarding the validity of the stipulated judgment.  For over a year from November 2010 through November 2011, Tammy sought enforcement and modification of the stipulated judgment by the trial court, but now on appeal she argues that the stipulated judgment must be set aside.  Finally, of course, this case is not a contempt proceeding.  In light of these differences, Tammy's reliance on *Davidson* is misplaced.  As the *Davidson* court recognized, a judgment entered that fails to meet the requirements of section 664.6 (or some other enforcement mechanism) is "in excess of the court's jurisdiction."  (*Davidson*, *supra*, 70 Cal.App.4th at p. 529.)  An act in excess of jurisdiction is *not* void; it is merely voidable and is valid until set aside.  (*American Contractors*, *supra*, 33 Cal.4th at p. 661.)

### III.    *Any other challenge to the stipulated judgment has been forfeited*

As Daniel points out, Tammy did not file a motion to set aside the stipulated judgment within a reasonable time.  Indeed, it appears from the record that she never filed a motion to set aside the stipulated judgment at all.  Nor did Tammy file a motion explaining what the date of separation should be, even after the trial court requested to be "educate[d]" about her position on the issue.  Far from seeking to set aside the stipulated

16.

judgment, Tammy initially asked the court to *enforce* the stipulated judgment, which she described as a "judgment affect[ing] all matters apart from termination of marriage .…"

Daniel argues that Tammy's appeal is not appropriate and the proper procedure for challenging the validity of the stipulated judgment is filing a motion to set aside the judgment with the trial court. He asserts, "Tammy failed to file such a motion; therefore this matter should not be brought before the Appellate court." Although Daniel does not use the words "forfeiture" or "waiver," we understand Daniel's argument as raising the fundamental rule that appellate courts do not ordinarily consider issues raised for the first time on appeal. (*Bank of America, N.A. v. Roberts*, *supra*, 217 Cal.App.4th at pp. 1399-1400.) As we have explained, we considered Tammy's claim that the stipulated judgment is void because void judgments may be challenged collaterally at any time. (*County of San Diego v. Gorham, supra,* 186 Cal.App.4th at p. 1226.) Now that we have concluded the stipulated judgment is not void, we agree with Daniel that any other challenge to the stipulated judgment is not properly before us because Tammy did not challenge the validity of the stipulated judgment with the trial court.

Tammy's contention on appeal is that the trial court erred by relying on the stipulated judgment and not considering other evidence that suggested a later date of separation. But the stipulated judgment was the "judgment of dissolution of marriage" in the case reserving only the issue of marital status; it expressly provided that it was intended to be "a final and complete settlement of all [the parties'] rights and obligations, including property rights and property claims"—presumably including the date of separation; and Tammy herself believed the stipulated judgment was enforceable, as she asked the court to take judicial notice of the stipulated judgment and to enforce certain of its terms. Under these circumstances, we cannot fault the trial court for relying on the stipulated judgment to determine the date of separation *when Tammy never argued to the trial court that the judgment was invalid*. As a result, we reject Tammy's challenge to the trial court's ruling on the date of separation.

17.

*In re Marriage of Umphrey* (1990) 218 Cal.App.3d 647, cited by Tammy, does not change our conclusion. In that case, the wife moved to set aside a marital settlement agreement and judgment on the ground of extrinsic fraud, claiming that the husband had failed to disclose a community property asset. (*Id*. at p. 654.) The trial court believed it was jurisdictionally bound to accept the date of separation recited in the settlement agreement, but the appellate court concluded the trial court's belief was incorrect. (*Id*. at p. 656.) The appellate court explained: "[P]aramount to our determination of this issue is the fact that Wife's motion involved a direct invocation of the equity powers of the court—indeed, she sought to overturn a final judgment and marital settlement agreement nearly a year old. 'The first duty of equity is to be equitable.' [Citation.] A court of equity is bound to consider substance over form [citations] and therefore may view the conduct of the parties rather than the terms of the written instrument in order to ascertain their true intent." (*Id*. at p. 657.)

In this case, however, Tammy never argued that the stipulated judgment should be set aside, and the trial court did not indicate that it believed it was jurisdictionally bound to accept the facts recited in the stipulated judgment. Tammy simply did not offer a legal argument for the trial court to *reject* the date of separation specified in the apparently valid stipulated judgment.

We emphasize that no motion to set aside the stipulated judgment was made in this case, and so the record has not been developed on issues relevant to such a motion. As an appellate court, we would not rule on a motion to set aside the stipulated judgment in the first instance, and we express no opinion on how the trial court should rule if such a motion were made.

### *DISPOSITION*

The judgment is affirmed. Respondent is awarded costs on appeal. Both parties request attorney fees, but we decline to entertain the requests, which are better suited to

determination by the trial court.  (See *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 319 [noting prevailing appellant "may be awarded … attorneys' fees in the trial court's discretion, upon an appropriate motion in that court"].)

_____

Hoff, J.[*]

WE CONCUR:


_____

Gomes, Acting P.J.


_____

Poochigian, J.

---

[*]Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.