Filed 6/12/14  Pestana v. Bank of America CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DANIEL PESTANA,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>        Defendant and Respondent. | A137566<br><br>(Contra Costa County<br>Super. Ct. No. MSC11-02600) |

## I.  INTRODUCTION AND BACKGROUND[1]

Plaintiff Daniel Pestana sued his mortgage loan servicers, Bank of America, N.A., and BAC Home Loans Servicing, LP (collectively, "Bank") after Bank denied his application for a loan modification under the federal Home Affordable Mortgage Program (HAMP), and instead offered him an allegedly less favorable in-house modification, which he accepted.  In his first amended complaint (FAC), Pestana alleges Bank representatives made misrepresentations about the requirements and availability of a HAMP modification, breached promises to modify his loan, improperly stalled the modification review process, and incorrectly denied his application for a HAMP modification.

The trial court sustained Bank's demurrer to the FAC without leave to amend, concluding none of Pestana's claims (for intentional misrepresentation, promissory estoppel, unfair competition, and breach of oral agreements) stated a cause of action.

---

[1] We provide additional background facts in the sections of this opinion addressing the parties' arguments on appeal.

1

Pestana appeals, contending the allegations in the FAC are sufficient to state the specified causes of action and, in the alternative, requesting leave to amend.

We conclude Pestana stated a cause of action under the unfair competition law (UCL) (Bus. & Prof. Code,[2] § 17200 et seq.), but the court properly sustained the demurrer without leave to amend as to all other causes of action. We therefore affirm in part and reverse in part.

## II. DISCUSSION

### A. Standard of Review

In reviewing whether the trial court erred in sustaining Bank's demurrer without leave to amend, we review the FAC de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, citing *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

### B. Breach of Oral Agreements (Seventh Cause of Action)

In his seventh cause of action, Pestana alleges Bank's representatives orally promised Bank would review Pestana's application for a loan modification and would

---

[2] All statutory references are to the Business and Professions Code unless otherwise stated.

modify his loan.  Pestana claims Bank breached these oral agreements by failing to evaluate his application in good faith and by denying his application for a HAMP modification.  The trial court correctly sustained Bank's demurrer to this cause of action without leave to amend.

"The statute of frauds requires any contract subject to its provisions to be memorialized in a writing subscribed by the party to be charged or by the party's agent.  [Citations.]  An agreement for the sale of real property or an interest in real property comes within the statute of frauds.  That includes a promissory note and a deed of trust securing performance under the note.  [Citation.]  'An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds.' "  (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1503 (*Rossberg*).)  Under these principles, a loan modification agreement changing the terms of the applicable note and deed of trust must be in a writing signed by Bank.  (*Ibid.*; accord, *Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 552–553 [forbearance agreement modifying terms of note and deed of trust was subject to statute of frauds].)  Because Pestana alleges only that Bank *orally* promised to modify his loan, he has failed to state a cause of action for breach of contract.  Moreover, to the extent Pestana alleges Bank promised to review his application and then to offer a loan modification on terms to be specified in the future, such an " 'agreement to agree' " is unenforceable.  (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 213–214; *Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 59; but see *Copeland v. Baskin Robbins U.S.A.* (2002) 96 Cal.App.4th 1251, 1255 [recognizing cause of action for breach of agreement to negotiate in good faith].)[3]

On appeal, Pestana concedes that, in general, an oral modification agreement of the type he alleges is unenforceable under the statute of frauds.  But he argues that, under

---

[3] Pestana does not allege the parties reached an agreement to negotiate the terms of a HAMP loan modification.  Instead, Pestana alleges Bank promised to review his application and to offer him a HAMP modification if he qualified, but then did not offer him any HAMP modification.

*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780 (*West*), this principle does not apply to HAMP loan modifications. Pestana is incorrect. The *West* court did not enforce an oral modification agreement or state an exception to the statute of frauds. In *West*, the court held that, where the plaintiff alleged she entered into a written trial plan agreement under HAMP, and the lender failed to offer her a permanent loan modification as required by that agreement, the plaintiff had stated a cause of action for breach of written contract. (*West, supra,* 214 Cal.App.4th at pp. 789, 796, 799.) Pestana has not alleged he and Bank entered a written trial plan agreement under HAMP. To the contrary, Pestana concedes Bank denied his application for a HAMP modification without offering him a trial plan agreement.

Pestana suggests that, under *West*, he can overcome the statute of frauds because he alleges in the FAC that he received a letter from Bank listing the documents he needed to submit in connection with his application for a HAMP modification. As Pestana notes, the court in *West* stated that, under the bank's interpretation of the written trial plan agreement, a letter from the bank to the borrower constituted a modification of the agreement. (*West, supra,* 214 Cal.App.4th at p. 798.) Noting that a contract in writing may be modified by a contract in writing (see Civ. Code, § 1698, subd. (a)), the *West* court stated that, although the letter was not signed by a representative of the bank, the letter bore the bank's letterhead, "which suffices as a signature." (*West, supra,* 214 Cal.App.4th at p. 798.) This passage from *West* does not assist Pestana. As noted, Pestana never entered a written trial plan agreement under HAMP; accordingly, this case, unlike *West*, raises no question of whether a subsequent letter from the lender modified a trial plan agreement. Moreover, the letter on which Pestana relies, which is attached to the FAC, does not constitute, or specify the terms of, a loan modification. It just lists the documents Pestana should submit in support of his application for a HAMP modification.

Finally, Pestana argues he could amend to state a cause of action for breach of contract. Pestana states he could allege he qualified financially to be placed in a trial payment plan under HAMP, so Bank was obligated to offer him a trial plan agreement; if he had entered a trial plan agreement, he would have made the payments required under

4

the agreement; and Bank therefore would have been obligated to offer him a permanent loan modification. These proposed allegations do not state a cause of action for breach of contract. "The standard elements of a claim for breach of contract are '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom. [Citation.]' " (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1178.) Pestana's proposed allegations do not establish the first of these elements, i.e., that he and Bank actually entered a HAMP trial plan agreement or other contract requiring Bank to offer him a permanent HAMP modification.[4]

## C. Promissory Estoppel (Fifth Cause of Action)

In his promissory estoppel cause of action, Pestana alleges he relied to his detriment on oral promises by Bank's representatives to evaluate his application for, and to offer him, a loan modification. "The doctrine of promissory estoppel 'make[s] a promise binding under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange.' " (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1040–1041 (*Garcia*).) " ' "The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and

---

[4] To the extent Pestana argues Bank was legally obligated under HAMP to enter into a trial plan agreement with him, we note courts have held HAMP did not create a private federal right of action for borrowers against lenders. (*Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 928, fn. 9 (*Bushell*); *Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1399; but see *West, supra,* 214 Cal.App.4th at p. 788 [declining to address whether HAMP creates a private right of action, because the plaintiff asserted only California state law claims].) In any event, Pestana makes no argument on appeal that he has standing to sue Bank for a violation of HAMP, so he has not met his burden to show a reasonable possibility he could amend his complaint to state such a cause of action. (See *Rossberg, supra,* 219 Cal.App.4th at p. 1491 [to satisfy appellate burden of showing reasonable possibility of amendment, plaintiff must " 'set forth the "applicable substantive law" [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it,' " as well as " 'factual allegations that sufficiently state all required elements of that cause of action' "].)

foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.' " ' " (*Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 225 (*Aceves*).) As to the requirement of a clear and unambiguous promise, we note that, "unlike a party seeking to establish a promise in a pure breach of contract context, a party seeking to establish promissory estoppel cannot rely on extrinsic evidence to explain an ambiguous statement." (*Garcia, supra,* 183 Cal.App.4th at p. 1044.)

Pestana appears to base his promissory estoppel claim on oral statements made by Bank representatives during three telephone conversations. None of these statements constitutes a clear and unambiguous promise supporting a claim for promissory estoppel.

Pestana first refers to an alleged oral promise by a Bank representative named Bob (in a June 2009 telephone conversation) that, if Pestana became delinquent on his mortgage payments, he would receive a loan modification. Notably, Pestana does not allege Bob specifically promised that Pestana would receive *a HAMP modification*. And, any such allegation would be inconsistent with Pestana's allegation in the FAC that a different Bank representative informed him about HAMP in a subsequent conversation. Pestana alleges in the FAC (and reiterates in his appellate brief) that, when he spoke to a Bank representative named Denise in March 2010 (nine months after his conversation with Bob), Denise "informed [Pestana] of [HAMP]." Pestana does not allege he was aware of HAMP prior to the March 2010 conversation with Denise.

Bob's general promise of a modification provides no support for Pestana's promissory estoppel claim, because it was not a clear and unambiguous promise to offer a HAMP modification. And, Bank fulfilled any general promise of a modification by offering an in-house modification, which Pestana accepted. Finally, even if Bob had referred to HAMP, his promise was not clear and unambiguous because it did not specify the terms of the promised modification. (See *Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885, 891.)

Pestana next alleges Denise promised in the March 2010 conversation that, if Pestana returned a HAMP application and supporting documentation, he "would be evaluated for a HAMP modification." The FAC's initial description of this conversation

6

states Denise "implied" Bank's evaluation "would be honestly conducted in good faith." Later portions of the FAC refer back to or summarize this conversation as including a representation by Denise that Bank would evaluate Pestana's application "honestly, diligently and in good faith." In light of Pestana's initial concession that Denise only implied Bank would conduct the evaluation in a certain manner, we do not construe the FAC as alleging Denise made an express promise on this point.

Denise's general statement that, if Pestana submitted a HAMP application, he would be evaluated for a HAMP modification was not a clear and unambiguous promise that Bank would conduct its evaluation in a particular manner. And, according to the FAC, Bank fulfilled its general promise to evaluate Pestana's application. Pestana submitted his application and supporting documentation sometime after receiving an application packet from Bank in April 2010. Bank evaluated the application and concluded in August 2010 that Pestana did not qualify for a HAMP modification. This is not a case in which a lender promised to evaluate a loan modification application and then failed or refused to do so.

Finally, Pestana alleges that, in a May 2010 telephone conversation, a Bank representative named Shawn stated Bank had received all the required supporting documentation for Pestana's HAMP application and the review process would begin immediately. The FAC's initial description of this conversation only mentions these statements. Later in the FAC, in connection with the promissory estoppel cause of action, Pestana appears to allege these express statements included an implied promise about the manner in which Bank would evaluate Pestana's application. Pestana alleges Shawn's representation that Bank had received the necessary documentation and would begin the HAMP review process immediately "was also a promise that [Bank] would honestly, diligently, and in good faith process his application, following the HAMP guidelines and requirements." Finally, elsewhere in the FAC, Pestana refers back to or summarizes this conversation as including a representation by Shawn that the application would be evaluated "honestly and in good faith." Giving the FAC " 'a reasonable interpretation, reading it as a whole and its parts in their context' " (see *Melton v.*

7

*Boustred* (2010) 183 Cal.App.4th 521, 528), we do not construe the FAC as alleging that Shawn made an express promise as to how the review would be conducted (other than stating the review would begin immediately).

Shawn's general statement that Bank had received Pestana's documentation and would begin to review his application immediately was not a clear and unambiguous promise that Bank would conduct its evaluation in a particular manner. Moreover, as to the express promise Shawn allegedly did make (i.e., that Bank would begin its review immediately), the allegations in the FAC show Bank began reviewing Pestana's application promptly after this conversation. Pestana spoke with Shawn on May 18, 2010. Bank next communicated with Pestana on May 24, 2010, to request additional supporting documentation.

*Aceves* is distinguishable. In that case, the appellate court held a bank's promise to " 'work with [Aceves] on a mortgage reinstatement and loan modification' if she no longer pursued relief in the bankruptcy court" was a clear and unambiguous promise supporting a claim for promissory estoppel. (*Aceves, supra,* 192 Cal.App.4th at p. 226.) The bank's promise in *Aceves* conveyed that the bank would not foreclose on Aceves's home without first negotiating with her to reinstate and modify the loan on mutually agreeable terms. (*Ibid.*) Although Aceves did not, and could not, allege she relied on the terms of a *modified loan agreement* in forgoing bankruptcy relief, she alleged she relied on the bank's promise to *negotiate* and the bank failed to negotiate. (*Ibid.*) Here, in contrast, Pestana has not alleged Bank clearly and unambiguously promised to negotiate with him to modify his loan. Instead, Bank representatives allegedly promised Bank would review Pestana's application for a HAMP modification, which Bank did.

Because Pestana has not alleged a clear and unambiguous promise supporting a cause of action for promissory estoppel, the trial court correctly sustained Bank's demurrer to this cause of action without leave to amend.[5]

---

[5] Pestana's only proposed amendment to this cause of action, i.e., adding facts supporting a claim that the opinions of Bank representatives may in some circumstances be actionable as misstatements of fact (see *Jolley v. Chase Home Finance, LLC* (2013)

**D.     Intentional Misrepresentation (First through Fourth Causes of Action)**

Pestana asserts four causes of action for "intentional misrepresentation," or fraud, based on alleged statements by Bank representatives.  The elements of fraud are " ' "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." ' " (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1060.)

" ' "Promissory fraud" is a subspecies of fraud and deceit.  A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.' " (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973.)  The elements of promissory fraud are:  "(1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e]." (*Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1453.)  As with any form of fraud, each element of a promissory fraud claim must be alleged with particularity.  (*Rossberg, supra,* 219 Cal.App.4th at p. 1498.)

Pestana has failed to state a cause of action for fraud.  As Pestana emphasizes in his appellate brief, his first three fraud claims are based, respectively, on the above-described statements and promises allegedly made by Bank representatives Bob, Denise and Shawn.[6]  The allegations in the FAC do not establish these representatives made false

---

213 Cal.App.4th 872, 892), does not address his failure to allege a clear and unambiguous promise, an essential element of a promissory estoppel cause of action.  (See *Aceves, supra,* 192 Cal.App.4th at p. 225.)

[6] To the extent Pestana bases his fraud causes of action on more general assertions that Bank made misrepresentations, those allegations do not satisfy the requirement that fraud be pleaded with specificity.  (See *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1261–1262 (*Morgan*).)

statements or made promises without any intention of performing them. To the contrary, as discussed above, the FAC establishes Bank fulfilled Bob's promise to offer Pestana a loan modification and Denise's and Shawn's promises to evaluate Pestana's application for a HAMP modification. As for Shawn's statement that Bank had received all the documentation needed to process Pestana's HAMP application, Pestana alleges this was a *true* statement, not a misrepresentation. To the extent Pestana characterizes Shawn's statement as a *false* representation that "nothing more would be needed from [Pestana]," Pestana has not alleged he detrimentally relied on this statement between the time Shawn made it on May 18, 2010, and the time Bank began asking for additional documentation on May 24, 2010.

In his fourth cause of action for fraud, Pestana focuses on (1) oral and written requests by Bank employees, between May and August of 2010, for additional documentation in support of Pestana's HAMP application, and (2) Bank's statement in its August 5, 2010 letter that, based on his income, Pestana was not eligible for a HAMP modification. As to the requests for documentation, Pestana has not alleged facts supporting a conclusion these requests constituted false representations or false promises, and he makes no argument on this point in his appeal brief. Pestana does allege Bank's statement he was not eligible under HAMP was false. But Pestana does not allege he believed or relied on this statement. To the contrary, according to the FAC, Pestana disagreed with Bank's conclusion and promptly (on August 23, 2010) submitted documentation in support of his claim Bank had erroneously calculated his income. He also appealed the decision in September 2010.

For the foregoing reasons, the court properly sustained Bank's demurrer without leave to amend as to Pestana's first, second, third and fourth causes of action for fraud.[7]

---

[7] Pestana presents no argument as to how he could amend his fraud claims to state a cause of action. (See *Rossberg, supra,* 219 Cal.App.4th at p. 1491 [plaintiff has appellate burden to specify how he could amend to state cause of action].)

**E.     Unfair Competition (Sixth Cause of Action)**

The UCL "defines unfair competition as 'any unlawful, unfair or fraudulent business act or practice.' (§ 17200.) Therefore, under the statute 'there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent.' " (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311.) Pestana relies on the second and third prongs of the statute, i.e., he alleges Bank engaged in unfair and fraudulent business acts and practices.

Pestana alleges Bank made false or misleading representations to him and to other borrowers about the availability of loan modifications and Bank's modification review process, and engaged in related improper conduct. Bank allegedly (1) told borrowers, including Pestana, that, if (and only if) they stopped making mortgage payments, they could apply for loan modifications and Bank would review their applications in good faith, (2) promised Pestana he would be granted a modification, (3) stalled the review process for Pestana and other borrowers, including by requesting documents Bank had already received, and (4) falsely represented to qualified borrowers, including Pestana, that they did not qualify for HAMP modifications.

**1.     Standing**

Bank contends Pestana lacks standing to sue under the UCL. Section 17204, as amended in 2004 by Proposition 64, limits private standing to bring a UCL action to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." (§ 17204.) To satisfy this standing requirement, "a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322 (*Kwikset*), original italics.) "A UCL claim will survive a demurrer if the plaintiff can plead ' "general factual allegations of injury resulting from the defendant's conduct." ' " (*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 521 (*Jenkins*).)

11

When a plaintiff brings a claim under the fraud prong of the UCL based on alleged misrepresentations, the limitations on standing established by Proposition 64 impose an actual reliance requirement, because "reliance is the causal mechanism of fraud." (*In re Tobacco II Cases, supra,* 46 Cal.4th at p. 326.) In alleging reliance, the plaintiff "must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct," but "the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct." (*Id.* at p. 328.)

In his UCL cause of action (including allegations incorporated into that cause of action by reference), Pestana alleges he incurred late fees and penalties after he stopped making (and continued to withhold) his mortgage payments in reliance on Bank's representations about the availability and requirements of a loan modification. At this stage of the litigation, these allegations satisfy the economic injury and causation requirements of standing under the UCL. Pestana has alleged he incurred a "personal, individualized loss of money or property in any nontrivial amount" (*Kwikset, supra,* 51 Cal.4th at p. 325), i.e., late fees and penalties. Pestana also has alleged this injury was caused by Bank's alleged unfair and fraudulent conduct, i.e., false or misleading statements about the availability and requirements for a loan modification and the nature of Bank's review process. (See *Gabali v. OneWest Bank, FSB* (N.D.Cal. Mar. 29, 2013, No. 5:12-CV-02901 EJD) 2013 U.S.Dist. Lexis 47193, *2-*5, *15-*20 (*Gabali*)[8] [plaintiff adequately alleged standing under UCL where she incurred late fees, "negative actions against property" (i.e., the bank took steps toward foreclosure), and "negative actions against credit" after defaulting on her mortgage payments in reliance on bank representatives' statements about availability of loan modification].)[9]

---

[8] The California Rules of Court do not prohibit citation to unpublished federal cases, which may be cited as persuasive authority. (*Nungaray v. Litton Loan Servicing, LP* (2011) 200 Cal.App.4th 1499, 1501, fn. 2.)

[9] Bank suggests in a footnote that *Gabali* is distinguishable because the borrower in that case initially applied for an in-house modification rather than a HAMP modification. But the *Gabali* decision does not specify the type of modification the borrower initially sought, and some of the misrepresentations the bank allegedly made in

*Jenkins*, cited by Bank, is distinguishable. In *Jenkins*, the court held the impending foreclosure of the plaintiff's home did not satisfy the causation prong of the UCL standing test, because the plaintiff did not plead a "causal link" between that economic injury and the six unfair or unlawful acts allegedly committed by the defendants. (*Jenkins*, *supra*, 216 Cal.App.4th at p. 523.) Instead, the plaintiff's default caused her injury. The plaintiff's default "triggered the lawful enforcement of the power of sale clause in the deed of trust, and it was the triggering of the power of sale clause that subjected [the plaintiff's] home to nonjudicial foreclosure." (*Ibid.*) The *Jenkins* court stressed that the plaintiff's default occurred *before* the six unlawful or unfair acts she alleged as the basis of her UCL cause of action; the plaintiff therefore could not assert the alleged wrongful acts caused her injury. (*Ibid.*) Here, in contrast, Pestana alleges he stopped making his mortgage payments in January 2010, *after* (and in reliance on) representations in June 2009 by a Bank representative that (1) Bank could not help him with a loan modification as long as he was current on his payments, and (2) if he were to miss his payments, he would receive a modification. Pestana also alleges that he continued to withhold his mortgage payments in reliance on subsequent representations by Bank representatives about HAMP and Bank's review process. Pestana thus alleges he defaulted, and incurred the resulting late fees, *because of* Bank's alleged misrepresentations. (See *Gabali, supra,* 2013 U.S.Dist. Lexis 47193, *2-*5, *15-*20; see also *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 82–83 [holding that, under *Jenkins*, plaintiff had not alleged any causal connection between foreclosure and defendant bank's alleged wrongful acts, but granting plaintiff leave to amend to allege bank's misrepresentations or other wrongful conduct caused him to lose his home through foreclosure].)

Bank's remaining arguments as to standing are unpersuasive. Bank asserts late fees and penalties cannot constitute injury for purposes of UCL standing, because Pestana

---

that case concerned the requirements for a HAMP modification. (*Gabali, supra,* 2013 U.S.Dist. Lexis 47193, *2-*5, *12-*15.)

was already obligated, under the applicable promissory note and deed of trust, to pay such fees if he missed his mortgage payments. (See *Auerbach v. Great Western Bank* (1999) 74 Cal.App.4th 1172, 1185, 1187 [plaintiffs who alleged they were fraudulently induced into continuing to make mortgage payments could not recover those payments as damages because they already were contractually obligated to make the payments].) Assuming the note and deed of trust so provide,[10] we are not persuaded such provisions establish as a matter of law Pestana suffered no economic injury as a result of Bank's alleged conduct. As noted, Pestana alleges he stopped making his mortgage payments, and incurred the resulting late fees, because of Bank's misrepresentations. Under the facts as alleged, Pestana would not have become obligated to pay the late fees if he had not stopped making his payments in reliance on Bank's representations. Further, to the extent Bank suggests Pestana may not be entitled to recover specific amounts from Bank (an issue we do not address), such an argument does not establish Pestana did not allege economic injury sufficient to confer UCL standing. (See *Kwikset, supra,* 51 Cal.4th at pp. 335, 337 [a plaintiff need not show he is eligible for restitution under § 17203 as a prerequisite to establishing standing under § 17204].)

Bank also notes Pestana does not allege any Bank representative told him late fees would be waived or forgiven if he applied for a loan modification. But Bank cites no authority suggesting a plaintiff can only prove the causation-of-injury element of UCL standing by showing the defendant specifically promised the plaintiff would not suffer the alleged economic injury at issue. Instead, the UCL requires a plaintiff to present " ' "general factual allegations" ' " (*Jenkins, supra,* 216 Cal.App.4th at p. 521) showing his economic injury "was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim" (*Kwikset, supra,* 51 Cal.4th at p. 322,

---

[10] In support of this argument, Bank cites documents that apparently were the subject of a request for judicial notice in connection with Bank's demurrer to Pestana's original complaint. Bank does not contend the trial court took judicial notice of these documents in connection with Bank's demurrer to the FAC.

14

original italics). For the reasons discussed above, we conclude Pestana's allegations meet this standard.

Finally, Bank contends Pestana cannot show injury because his admission he ultimately received an in-house loan modification "suggested that his modification efforts with [Bank] resulted in an economic benefit, not a loss." At the demurrer stage, we may not determine factual questions such as how the amount of economic injury Pestana allegedly sustained as a result of Bank's conduct compares with the amount of any benefit he received from the in-house loan modification he accepted.

Because Pestana's allegation he incurred late fees and penalties as a result of Bank's misrepresentations establishes UCL standing at the pleading stage, we need not determine whether the other injuries alleged in the FAC (such as (1) the cost of submitting documents to Bank and (2) costs resulting from the difference between the in-house modification Pestana received and the HAMP modification he believes he should have received) would be sufficient to establish standing.

### 2. "Fraudulent" Conduct

"The term 'fraudulent' as used in section 17200 'does not refer to the common law tort of fraud but only requires a showing members of the public " 'are likely to be deceived.' " ' [Citations.] [Fn. omitted.] Unless the challenged conduct ' "targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer." ' " (*Puentes v. Wells Fargo Home Mortgage, Inc.* (2008) 160 Cal.App.4th 638, 645.) "A UCL claim based on the fraudulent prong can be based on representations that deceive because they are untrue, but ' " 'also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under' " the UCL.' " (*Morgan, supra,* 177 Cal.App.4th at p. 1255.) " '[U]nless we can say as a matter of law that contrary to the complaint's allegations, members of the public were *not* likely to be deceived or misled by [the defendant's alleged conduct], we must hold that [the plaintiff] stated a cause of action.' " (*Id.* at p. 1257, original italics.) The

15

requirement that a plaintiff plead fraud with specificity does not apply to causes of action under the UCL. (*Id.* at p. 1256.)

Although we have concluded above that Pestana's allegations do not satisfy the elements of the other causes of action he asserts in the FAC, we conclude he has alleged sufficient facts to state a cause of action under the fraudulent prong of the UCL, i.e., he has alleged Bank made representations that were untrue or misleading and were likely to deceive reasonable consumers. As noted, Pestana alleges Bank made false or misleading representations and promises to him and to other borrowers about the availability and requirements of loan modifications, including HAMP modifications. For example, Pestana alleges Bank told him and other borrowers they would only be considered for loan modifications if they stopped making their mortgage payments. Bank allegedly then stalled the review process, including by requesting unneeded copies of previously-submitted documents, but encouraged Pestana and other borrowers to wait and continue to accrue additional late fees and penalties. Pestana alleges that, as a result of these delays, Bank "enjoyed greater and greater profits under their servicing agreements." Pestana also alleges Bank falsely told him and other borrowers they did not meet the eligibility requirements for HAMP modifications.

Bank contends Pestana has not stated a cause of action because Bank "did not say anything about the contours of the HAMP program and borrower eligibility criteria that was deceitful." Bank cites an excerpt of the HAMP eligibility guidelines (included in excerpts that are attached to the FAC) stating a loan is eligible for HAMP if the loan "is delinquent or default is reasonably foreseeable." The cited excerpt does not establish that only delinquent loans are eligible, and does not establish as a matter of law that Bank's alleged representations that borrowers had to stop making mortgage payments to be considered for loan modifications were accurate and not misleading.[11] More generally, at

_____

[11] In its brief, Bank suggests its representations to Pestana on this issue were accurate because Bank told Pestana "he would not qualify because he was current on his mortgage *and* had expressed no concern of imminent default." (Italics added.) This assertion is contrary to Pestana's allegation in the FAC (which we must accept as true)

16

the demurrer stage, we cannot determine whether Bank's statements about this issue and about related issues, such as the review process and the documents needed to process applications, were accurate and not misleading.

Bank also argues that, because Pestana received a modification, Bank's representation that he would receive one was not false. But Pestana's allegations, taken as a whole, including his allegations that Bank made misleading statements about the prerequisites for obtaining a modification and the documents needed to process applications, are sufficient to state a cause of action under the fraudulent prong of the UCL.

Because Pestana has stated a cause of action under the fraudulent prong of the UCL, we need not determine whether this cause of action is also viable on the theory Bank engaged in "unfair" business practices.

## F. The Absence of a Private Federal Right of Action Under HAMP Does Not Bar Pestana's State Law Claims

As noted above, courts have held HAMP did not create a private federal right of action for borrowers against lenders. (See *Bushell, supra,* 220 Cal.App.4th at p. 928, fn. 9; *Bank of America, N.A. v. Roberts, supra,* 217 Cal.App.4th at p. 1399; but see *West, supra,* 214 Cal.App.4th at p. 788 [declining to address this question].) Courts have also held borrowers are not intended third party beneficiaries of HAMP contracts between lenders and the United States Department of the Treasury. (See *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1282, fn. 17; *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012) 673 F.3d 547, 556, 559, fn. 4 (*Wigod*).)

Bank argues these principles bar Pestana's claims in this action, all of which are California state law claims. Bank suggests that, because Pestana has no private federal right of action against Bank under HAMP, he also may not assert state law causes of action based on Bank's alleged conduct in connection with Pestana's application for a HAMP modification.

---

that Bank's representative simply told him Bank "could not help him with a loan modification as long as he was current."

We disagree. In *Bushell*, the appellate court (the Third District) agreed with the conclusion of the United States Court of Appeals for the Seventh Circuit in *Wigod* that the absence of a private federal remedy under HAMP does not displace state law causes of action. (*Bushell, supra,* 220 Cal.App.4th at p. 928, fn. 9; see *Wigod*, *supra*, 673 F.3d at pp. 581–585.) After concluding the plaintiffs had alleged a state law cause of action for breach of contract arising out of their efforts to obtain a permanent loan modification under HAMP (*Bushell, supra,* 220 Cal.App.4th at pp. 918–919, 928), the *Bushell* court stated: "Congress did not create, in HAMP, a private federal right of action for borrowers against lenders. (*Wigod*, *supra*, 673 F.3d at p. 559, fn. 4.) But as *Wigod* explained, 'The issue here, however, is not whether federal law itself provides private remedies, but whether it displaces remedies otherwise available under state law. The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because [the claim] refers to or incorporates some element of the federal law. . . . To find otherwise would require adopting the novel presumption that where Congress provides no remedy under federal law, [traditional] state law [principles] may not afford one in its stead.' (*Wigod*, *supra*, 673 F.3d at p. 581.)" (*Bushell, supra,* 220 Cal.App.4th at p. 928, fn. 9; accord, *West*, *supra*, 214 Cal.App.4th at p. 788 [Fourth Dist., Div. Three] [noting the *Wigod* court concluded "HAMP does not preempt or otherwise displace state law causes of action"]; *Sutcliffe v. Wells Fargo Bank, N.A.* (N.D.Cal. 2012) 283 F.R.D. 533, 553–554 [rejecting defendant Wells Fargo's argument plaintiffs' state law claims were barred because they constituted an " 'end-run' " around HAMP].)

We agree with this analysis, and we hold HAMP does not displace Pestana's state law causes of action (although several of them fail for other reasons, as discussed above). We are not persuaded by the federal district court decisions Bank cites for the contrary position; most of these cases predate (and none of them cite) the appellate decisions in *Wigod*, *West*, and *Bushell*. (See, e.g., *Vasquez v. Wells Fargo Home Mortg.* (S.D.Cal. Mar. 22, 2012, No. 11-CV-462 L (WMC)) 2012 U.S.Dist. Lexis 39404, *10-*11; *Tarsha v. Bank of America, N.A.* (S.D.Cal. Mar. 29, 2013, No. 11-CV-928 W (MDD)) 2013

18

U.S.Dist. Lexis 46255, *19-*20; *Velasco v. Aurora Loan Services LLC* (C.D.Cal. Feb. 21, 2012, No. 2:11-CV-04784 JHN-RZx) 2012 U.S.Dist. Lexis 21490, *6-*7.)

Bank argues *Wigod* and *West* establish only a "limited exception" to HAMP's general preclusion of state law claims; under this exception, a borrower who has executed a HAMP trial period plan (TPP) may sue for breach of contract if he or she makes the trial payments and the lender fails to offer the borrower a permanent loan modification. We disagree with Bank's reading of these decisions. Although *Bushell*, *West* and *Wigod* involved TPP's (see *Bushell, supra,* 220 Cal.App.4th at pp. 918–919, 928; *West*, *supra*, 214 Cal.App.4th at p. 786; *Wigod*, *supra*, 673 F.3d at pp. 554–555, 560), the courts in those cases did not hold the absence of a private federal right of action under HAMP precludes all state law claims relating to HAMP modifications except claims for breach of a written TPP. Instead, they stated generally that the absence of a private right of action under HAMP does not displace state law claims.[12] (See *Bushell, supra,* 220 Cal.App.4th at p. 928, fn. 9 [" 'The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because [the claim] refers to or incorporates some element of the federal law' "]; *Wigod*, *supra*, 673 F.3d at p. 581 [same]; *West*, *supra*, 214 Cal.App.4th at p. 788 [noting the *Wigod* court's conclusion that "HAMP does not preempt or otherwise displace state law causes of action"].) The absence of a private right of action under HAMP provides no basis for dismissal of Pestana's California state law claims.

### III.  DISPOSITION

The judgment of dismissal in favor of Bank is reversed. The order sustaining the demurrer is affirmed in part and reversed in part. The order is reversed as to the cause of

---

[12] In addition to permitting claims for breach of the TPP, each case found other state law claims were viable as well. (See *Bushell, supra,* 220 Cal.App.4th at pp. 919, 928–931 [breach of contract, promissory estoppel, and promissory fraud]; *West*, *supra*, 214 Cal.App.4th at p. 786 [fraud, negligent misrepresentation, breach of written contract, promissory estoppel, and unfair competition]; *Wigod*, *supra*, 673 F.3d at pp. 555, 559 [breach of contract, promissory estoppel, fraudulent misrepresentation, and violation of a state consumer protection statute].)

action for unfair competition (sixth cause of action).  The order is affirmed as to the rulings sustaining, without leave to amend, the demurrer to all other causes of action. The parties shall bear their own costs on appeal.


_____

Becton, J.*


We concur:


_____

Margulies, Acting P.J.


_____

Banke, J.


* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.