Filed 12/1/25  Montgomery v. Brooks CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| PRINTZ MONTGOMERY, | C098573 |
| Plaintiff and Respondent, | (Super. Ct. No. STA-FL-PAT-2013-0002471) |
| v. | |
| MARCHELLA BROOKS, | |
| Defendant and Appellant. | |

Marchella Brooks (Mother) appeals from findings and an order that gives Printz Montgomery (Father) legal and physical custody of their two children, provides that Mother's visitations with the children will be supervised, and states that her telephone communications with the children can be monitored and recorded by Father and will commence after she begins supervised visits. She argues the trial court's custody ruling was a clear abuse of discretion. Mother also argues that the trial court should have resolved this case sooner under Code of Civil Procedure section 583.310, which requires

1

civil actions be brought to trial within five years after they are commenced against a defendant. Finally, Mother argues the trial court erred in labeling her a vexatious litigant.

We affirm the judgment.

## FACTS AND HISTORY OF THE PROCEEDINGS

Mother and Father have two children together, T.B. (Daughter, born November 2010) and P.M. (Son, born April 2013).

The relationship between Mother and Father and their disputes over custody of the children over the years have been fraught.

In February 2019 Mother and Father were given joint legal custody of the children, with Mother getting primary legal custody and Father getting visitation. Between February 2019 and March 2020, Mother filed at least two requests to modify the visitation schedule.

In October 2020, Father filed a request for modification of the custody and visitation order seeking primary physical custody. Father alleged Mother would randomly decide when to follow or not follow the existing order, and she moved from Stockton to Oakland without telling him she was going to relocate.

At a hearing on March 15, 2021, there was an issue regarding Mother not bringing the children to Father on his scheduled visitation dates. The court noted that at a hearing in October 2020, it had cautioned Mother "that failure to follow [the custody and visitation] order could be grounds to change custody at" a later hearing. When the court gave Mother the opportunity to address the missed visits, she said, "I don't want my children left alone with his family. When I don't take them during the week, it's because of that." The court said it had no doubt Mother was intentionally withholding the children from Father. The court set a trial on the custody and visitation issues for May 18 and 19, 2021, and entered an order granting father primary physical custody with visitation to Mother while awaiting the results of a trial.

2

We do not have a transcript or settled statement regarding what transpired during the May 2021 trial.

The court entered findings and an order on May 27, 2021. It gave Mother and Father joint legal custody of the children and primary physical custody to Father. Mother was given visitation from Friday night to Sunday night on the first, third, and fifth weekend of each month; and in the afternoon every second and fourth Wednesday of the month. Mother was given the children every other week during summer breaks. For weekend visits, Mother would pick the children up at the beginning of the visits and Father would pick them up at the end. Mother was responsible for transportation for weeknight visits.

On May 28, 2021, Mother filed a motion to modify custody and visitation, and requested an emergency order. She sought legal and physical custody of the children. Among other things, Mother alleged that on May 18, 2021, Father slapped daughter in a kerfuffle over the daughter's cell phone, causing a concussion. She attached a copy of emergency room discharge instructions that indicated a diagnosis of a concussion on May 20, 2021. The court denied the request for an emergency order.

On June 2, 2021, Father filed his own request for a temporary restraining order, which was denied. He wanted physical and legal custody of the children. He requested Mother's visits with the children be monitored, and that her calls with them be limited to one 20-minute call per day that he could monitor. He believed Mother was encouraging the children to be disrespectful and make false allegations against him. He denied he ever slapped Daughter. He said their daughter became increasingly disobedient following the trial on May 18, 2021, and Mother was promoting this behavior. He said police informed him Mother had sought a protective order on May 19, 2021, which was denied, and again on May 20, 2021. He said when he spoke with a social worker who investigated the slapping allegations, she said she was confused by the concussion allegations, because she saw the child on a skateboard, alert, and playing outside.

3

According to Father, after the social worker asked him some questions, a police officer contacted Mother and told her to return the children. He said Mother then took the children to the hospital, and his attorney called Mother to inform Mother she was in violation of the court order to return the children. Father said when he told the social worker about the May 20, 2021, emergency room visit, the social worker was surprised because Mother had taken the child to the emergency room on May 19, 2021, and she was released, and there was no reason to bring her a second time. Father said that on May 22, 2021, when he returned home from a day in Santa Cruz with the children, police, Mother, and her family members arrived. He said her family members yelled at him and made a scene, and it took officers 20 minutes to get them to leave.

At the July 13, 2021 hearing, the court continued the matter, but admonished Mother to be sure to remember to drop off and pick up Son from football practice when Son had practice scheduled during her visitations. The matter was continued to August 23, 2021, and the court indicated it was leaning towards ordering supervised visitations for Mother until that date. We do not have a copy of findings and an order on the July 13, 2021, hearing.

On August 20, 2021, Father filed a supplemental declaration stating that while Mother was taking Son to practice, she repeatedly dropped him off late—one time he was 17 minutes late, and another he was 45 minutes late. He reiterated he felt Mother should have supervised visitation. Father stated he felt Mother was traumatizing Daughter with adult and court topics, involving Daughter in her attempts to control Father's care of the children, and creating emotional turmoil for the children by frivolously attempting to involve child protective services and law enforcement in their custody disputes.

There was a hearing on August 23, 2021, after which the court took the matter under submission. We do not have a copy of the findings or order entered on September 10, 2021. Based on Father's next request for modification, it appears the court did not order supervised visitations at that time.

4

On September 23, 2021, Father filed a request for modification of the custody and visitation order. He said on September 18, 2021, Mother did not take Son to Son's football game. He requested that Mother's pick up time be moved to follow scheduled extracurricular activities when the children had activities on her visitation days. He said he had also learned that Mother had filed actions against him for child support in Alameda County. The hearing was calendared for November 8, 2021, and later continued to November 30, 2021.

On October 13, 2021, Mother filed a request for a domestic violence restraining order against Father. Her request for a temporary order pending a hearing was denied. Mother filed a supporting declaration claiming Father had abused Mother emotionally and physically and had harassed her since the inception of their romantic relationship when she was a freshman in high school and he was three grade levels older. She alleged defendant had physically and emotionally abused their children.

There was a trial on Mother's request for a domestic violence restraining order on November 19, 2021, at which the parties were sworn in and gave testimony. We do not have a transcript of the hearing or a settled statement regarding what transpired at the hearing. The court concluded that it did not find domestic violence by a preponderance of the evidence and denied the request.

On November 30, 2021, the trial court entered an order modifying the existing custody and visitation order. The court stated the modifications were necessary based on Mother's continued violations of the existing custody order despite court admonishments. The court stated that when the children had extracurricular activities on a day they were scheduled to visit Mother, her visitation would start after the activity, with Mother to pick the children up at Father's home. The court also noted that a prior order had set a specific time for Mother to call the children when they were with Father, that Father alleged Mother would call or text outside the set times, and Mother told Daughter to call the police if Father took her phone. The court gave Father permission to take the children's

5

phones outside the hours of Mother's scheduled communications. The same day the court entered its findings and order for the November 30, 2021 hearing, Mother filed a request for a domestic violence restraining order, which was later denied.

The trial court denied requests to modify custody and visitation filed by both parties in early 2022.

Based on the register of actions and a responsive declaration filed by Mother, it appears Father filed a request for modification and temporary/emergency order on May 10, 2022. On May 11, 2022, the court granted some form of emergency relief, though a copy of the order was not placed in the record on appeal. At a June 22, 2022 hearing, the court awarded Father sole legal and physical custody of the children, with Mother to have supervised visits at her expense, and it calendared review hearings for July and August 2022. It also scheduled a time for the court mediator to speak with the children. The child abduction unit of the District Attorney's office was directed to assist in retrieving the children from Mother if she did not return them.

According to an application for a protective custody warrant seeking to have the children placed in the protective custody of any law enforcement agency that recognized the children that was filed by the San Joaquin County District Attorney's office on June 22, 2022, an agreement was reached with Mother and her counsel to deliver the children to the District Attorney's Office the morning of June 23, 2022, at 8:00 a.m., which was the time and place selected by Mother. Mother did not arrive at the appointed time, and at 9:13 a.m. sent an e-mail asking District Attorney representatives to pick the children up at the Alameda County Family Justice Center and to send a female employee. Mother stated she finds being in San Joaquin County traumatizing because the County has turned a "blind eye" to the abuse allegedly perpetrated by Father.

At a July 21, 2022 hearing, counsel for Father informed the court that the scheduled meeting between the children and the mediator never occurred, because the children were not returned to Father until July 1, 2022, after the date they were supposed

6

to meet with the mediator.  At the hearing, the court ordered the existing order would remain in place, with (1) a specification regarding when Mother could call the children; (2) permission to Father to monitor the calls with the children and terminate them if Mother engaged in inappropriate behavior during the calls; and (3) permission to both parties to record the calls.

Throughout June through October 2022, Mother filed various declarations accusing Father of mistreating or neglecting the children, making them unhappy, harming their academic performance, and frustrating her efforts to communicate with them.

At a November 7, 2022 hearing, Father's counsel advised the court that Mother had not yet had any supervised visitation with the children.  A representative of the District Attorney's office appeared and reported that with respect to a criminal protective order issued in a related criminal proceeding, the People and Mother had agreed to give deference to the family law court in determining appropriate custody and visitation with the children.  The court ruled that Mother could have phone contact with the children twice a week once she began her supervised visitations, and it allowed Father to monitor the calls and record illegal communication.  The court said Mother could calendar the matter after she had completed 12 supervised visits.

The court ordered Father's counsel to submit an order after hearing/judgment. Counsel did not prepare a findings and order in a timely manner, and the court issued an order to show cause as to why the court should not sanction her for failing to file the document.  The findings and order were entered on March 13, 2023.

On April 28, 2023, Mother noticed an appeal of the March 13, 2023, findings and order.

DISCUSSION

I

*Child Custody Order*

Mother argues that the trial court abused its discretion in awarding custody to Father. She writes the trial court's "failure to adequately consider the extensive and well-documented history of abuse and neglect by [Father] contravenes both statutory requirements and established case law." Mother's argument fails for a variety of reasons.

First, California Rules of Court, rule 8.204(a)(2)(C), requires an appellant to include with their opening brief "a summary of the significant facts limited to matters in the record." In addition to this requirement, any reference to a matter in the record must be supported "by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) "The *significant facts* are not simply the facts favoring the appellant. Rather, 'An appellant must fairly set forth all the significant facts, not just those beneficial to the appellant.' (*In re S.C.* (2006) 138 Cal.App.4th 396, 402 [].) 'And as to this, the leading California appellate commentary instructs: "Before addressing the legal issues, your brief should accurately and fairly state the critical facts (including the evidence), free of bias; and likewise as to the applicable law. [Citation.] [¶] Misstatements, misrepresentations[,] and/or material omissions of the relevant facts or law can instantly 'undo' an otherwise effective brief, . . . may draw sanctions [citation], and may well cause you to lose the case." [Citation.]' (*Pappas v. Chang* (2022) 75 Cal.App.5th 975, 985 [].)" (*Perry v. Kia Motors America, Inc.* (2023) 91 Cal.App.5th 1088, 1096.)

Here, the facts as stated in Mother's opening brief are far from neutral and are sometimes not supported by the record. For example, to support her factual statements that she suffered years of abuse from Father, Mother often cites a declaration she filed to

8

support her request for a restraining order.  In some instances, the page of the record cited does not contain a statement that, even if believed, would support her factual statement.

Moreover, some of the records that might assist this court in developing a clearer picture of what happened between the parties and in the proceedings in the trial court are not in the record.  For example, the record does not include a copy of Father's May 10, 2022, request for modification of the custody order.  It also does not contain a reporter's transcript or settled statement regarding what transpired at the May 11, 2022, hearing when the trial court granted some form of emergency relief based on that application.

It is the duty of an appellant to provide an adequate record on appeal.  (*In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 498.)  It is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and appellant has the burden to demonstrate, "on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment."  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)  " 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.  "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127 [].)  ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [].)  'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.]  Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 [].)"  (*Jameson*, at p. 609.)

Nonetheless, based on the record before us we find no abuse of discretion by the trial court.  Here, the record reflects that prior to the custody ruling, the trial court

considered Mother's allegations of domestic violence and found they were not proven by a preponderance of the evidence. In contrast, the evidence supports a finding that Mother disobeyed multiple prior custody orders and law enforcement officers had to get involved in one instance to deliver the children to the father. Indeed, the order Mother now appeals was the result of the court incrementally taking measures that would limit her ability to spend time alone with her children. It was not rashly made but carefully reflects the trial court's efforts to balance the benefits to the children of spending time with Mother against the risks that she would take actions to damage the relationships between the children and Father.

## II

### *Application of the Five-Year Rule*

Mother argues the trial court erred in allowing this case to continue for over five years, in contravention of Code of Civil Procedure section 583.310. This argument fails.

Mother has not identified anywhere in the record that demonstrates she has raised this issue before the trial court. " ' "[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." Thus, "we ignore arguments, authority, and facts not presented and litigated in the trial court. Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived. [Citations.]" ' [Citation.]" (*Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1398-1399.) Mother has not explained why we should consider her argument given her failure to raise that argument in the trial court. The argument has been forfeited.

## III

### *Vexatious Litigant*

Mother's third argument is regarding the "trial court's decision on April 6, 2023, to designate [her] as a vexatious litigant."

On November 10, 2022, three days after the November 7, 2022, custody hearing that resulted in the challenged custody order, Mother filed a motion for modification. On November 18, 2022, Father filed a request to have Mother declared a vexatious litigant. On March 14, 2023, the trial court entered a prefiling order regarding vexatious litigant that requires Mother to obtain approval from the presiding judge of the trial court before filing new litigation. On April 6, 2023, the trial court entered an order imposing sanctions on Mother based on her prior vexatious conduct.

On April 28, 2023, Mother filed a Notice of Appeal of the April 6, 2023, order. On May 24, 2023, this court sent Mother a letter advising her that her appeal from the April 6, 2023, order could not proceed without an order from the presiding justice of this court authorizing this appeal. The court told her she needed to file her request by May 31, 2023. On June 8, 2023, this court sent Mother a second letter noting that as of that date Mother had not filed a request to appeal. The court informed Mother that, as a result, her appeal taken from the April 6, 2023, order was deemed inoperative, and that this appeal would proceed "solely on the April 28, 2023, notice of appeal taken from the March 13, 2023, order."

11

DISPOSITION

The court's March 13, 2023, order is affirmed.  The April 6, 2023, order regarding Mother's status as a vexatious litigant was not within the scope of this appeal. Consequently, any relief Mother sought in her brief regarding that order is denied.


                                          ___/s/_____
                                          HULL, J.



We concur:



___/s/_____
EARL, P. J.



___/s/_____
KRAUSE, J.